**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DALE A. THOMAS, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 11-7578 |
| | : | |
| CHIEF OF POLICE STANLEY J. | : | |
| COOPERSMITH, BUSHKILL TOWNSHIP, | : | |
| and BUSHKILL TOWNSHIP POLICE | : | |
| OFFICERS JOHN DOE NOS. 1-5, | : | |
| Defendants. | : | |

DuBOIS, J.                                                                              August 20, 2012

**M E M O R A N D U M**

## I.      INTRODUCTION

This case arises from a longstanding dispute between plaintiff Dale Thomas and his neighbor, Alvera Flyte.  Plaintiff filed the present lawsuit under 42 U.S.C. § 1983, alleging that the Equal Protection Clause of the Fourteenth Amendment was violated when police officers exhibited favoritism toward Flyte in responding to the dispute.  He also alleges that the Bushkill Township noise ordinance is unconstitutionally vague.

Presently before the Court are three motions: (1) Defendants' Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rule 12(b)(2), (5) & (6) and Rule 12(f) Motion to Strike the "Damages" Section of the Complaint ("the first motion to dismiss"), (2) the Motion of Defendants Chief of Police Stanley J. Coopersmith and Bushkill Township to Dismiss Plaintiff's Complaint Pursuant to Federal Rule 12(b)(6) and Rule 12(f) Motion to Strike Portions of the "Damages" Section of the Complaint ("the second motion to dismiss"), and (3) plaintiff's Motion for Preliminary Injunctive Relief.

By Order of June 27, 2012, the Court denied the part of the first motion to dismiss that

argued that service of process on the Chief of Police was insufficient.  The Court deferred ruling

on the motion in all other respects.  For the reasons that follow, the first and second motions to

dismiss are granted in part and denied in part.[1]  Plaintiff's Motion for Preliminary Injunctive

Relief is denied.

## II.    BACKGROUND[2]

### A.    Factual Background

Since 1999, plaintiff has resided at 267 East Moorestown Road in Bushkill Township,

Pennsylvania.  (Compl. Background Section.)  Upon moving to that address, plaintiff

"immediately had problems with [his] next door neighbor," Flyte.  (Id.)  Plaintiff and Flyte have

made repeated complaints about each other to the Bushkill Township police.  The complaints

have arisen from a variety of disputes, including plaintiff's allegation that Flyte left debris in his

yard, (id. ¶ 3), and Flyte's allegation that plaintiff stole her property markers, (id. ¶¶ 4-6).

However, most frequently, Flyte has accused plaintiff of violating the local noise ordinance.  (Id.

¶¶ 7-14, 19-20.)  Plaintiff, in turn, has complained that Flyte is harassing him with false

complaints.  (Id. ¶¶ 11, 17.)

According to plaintiff, despite their knowledge that Flyte harasses plaintiff by filing false

complaints, Bushkill Township police officers have taken "no action" against Flyte.  (Id. ¶ 14.)

On the other hand, they "pounce upon plaintiff like a 'rabid dog'" whenever Flyte reports "any

slightest alleged infraction."  (Id. ¶ 33.)  Upon receipt of Flyte's noise complaints,

---

[1]The second motion to dismiss addresses the same issues that were presented in the first motion to dismiss and adds the issue of qualified immunity.

[2]As required on a motion to dismiss, the Court takes all plausible factual allegations contained in plaintiff's Complaint to be true.

"police . . . threaten [plaintiff] with citations for disturbing the peace, without ascertaining whether the complaint was legitimate."  (Id. ¶ 8.)

Plaintiff contends that the police are biased against him because Flyte is personally acquainted with defendant Coopersmith, the Chief of Police.  (Id. Background Section.) Coopersmith is allegedly "directing the police officers to allow Ms. Flyte to get away with these crimes, because he knows Ms. Flyte personally."  (Id. ¶ 35.)  Flyte has bragged to plaintiff that she "can get away with anything she wants" because of her relationship with Coopersmith.  (Id. Background Section.)

In addition to his equal protection claims, plaintiff challenges Bushkill Township Ordinance No. 2009-01, under which he is currently facing charges.  (Id. ¶¶ 21, 31, 33.)  The Bushkill Township Board of Supervisors and Chief of Police Coopersmith enacted the noise ordinance in 2009.  (Id. ¶ 21.)  In relevant part, the ordinance provides that "[i]t shall be unlawful for any person to make or cause to be made a noise disturbance within the jurisdictional boundaries of the Township of Bushkill, except as otherwise permitted in this ordinance." (Mem. Law Opp. Mot. Dismiss Ex. B.)[3]  The ordinance defines a "noise disturbance" as

> Any sound which:
> 1.  Endangers, would endanger or is likely to endanger, or injures[,] would injure or is likely to injure, the safety or health of humans or animals;
> 2.  Annoys, would annoy or is likely to annoy, or disturb a reasonable person of normal sensitivities;
> 3.  Endangers, would endanger or is likely to injure, personal or real property;
> 4.  Disturbs, or is likely to disturb, the peace; or
> 5.  Creates, would create or is likely to create a nuisance.

---

[3]The noise ordinance is both integral to plaintiff's claim and a matter of public record. The Court may thus consider its text in ruling on the motion to dismiss.  Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006).

3

(Id.)  It also specifies that an unlawful noise disturbance occurs when a person "[o]wn[s], keep[s], possess[es], harbor[s], or control[s] any animal which howls, barks, or makes other sounds continuously and/or incessantly for a period of 10 minutes . . . to the disturbance of any person . . . ; provided, however, that at the time the animal is making such noise, no person or animal is trespassing or threatening to trespass upon private property in or upon which the animal is situated."  (Id.)

      B.     Procedural History

Defendants filed the first motion to dismiss on March 20, 2012, asserting that plaintiff had failed to state a claim for relief and that plaintiff had not properly served process on defendants.  By Order of June 27, 2012, the Court ruled that plaintiff had made adequate service of process on Coopersmith but not on Bushkill Township.[4]  The Court directed plaintiff to "serve copies of the summons and complaint on Bushkill Township and file proof of service with the Court within 30 days of the entry of [the] Order."

Plaintiff did not provide the Court with proof of service on Bushkill Township until August 2, 2012, more than thirty days after issuance of the June 27, 2012, Order.  However, defendants state that plaintiff served process on Bushkill Township on July 13, 2012.  Since plaintiff has now properly served Coopersmith and Bushkill Township, the Court will address the merits of plaintiff's claims.

Because resolution of the motions to dismiss disposes of some aspects of plaintiff's motion for preliminary injunction, the Court addresses the motions to dismiss first.

---

[4]The Court also granted plaintiff's request to delete the Bushkill Township Police Department as a defendant and to add Bushkill Township Police Officers John Doe Nos. 1-5 as defendants.

### III.    MOTIONS TO DISMISS

#### A.    Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that, in response to a pleading, a defense of "failure to state a claim upon which relief can be granted" may be raised by motion to dismiss.  To survive a motion to dismiss, a civil plaintiff must allege facts that "'raise a right to relief above the speculative level.'"  Victaulic Co. v. Tieman, 499 F.3d 227, 234 (3d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  To satisfy the plausibility standard, a plaintiff's allegations must show that defendant's liability is more than "a sheer possibility."  Id.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  Id. (quoting Twombly, 550 U.S. at 557).

In Twombly, the Supreme Court used a "two-pronged approach," which it later formalized in Iqbal.  Iqbal, 556 U.S. at 679; Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  Under this approach, a district court first identifies those factual allegations that constitute nothing more than "legal conclusions" or "naked assertions."  Twombly, 550 U.S. at 555, 557.  Such allegations are "not entitled to the assumption of truth" and must be disregarded.  Iqbal, 556 U.S. at 679.  The court then assesses "the 'nub' of the plaintiff['s] complaint—the well-pleaded, nonconclusory factual allegation[s]"—to determine whether it states a plausible claim for relief.  Id.

#### B.    Analysis

Plaintiff asserts claims against Coopersmith and unnamed Bushkill Township police

officers under the Equal Protection Clause of the Fourteenth Amendment.  He also asserts an equal protection claim against Bushkill Township under <u>Monell v. New York Department of Social Services</u>, 436 U.S. 658, 694 (1978).  Finally, he contends that the Bushkill Township noise ordinance must be struck down as unconstitutionally vague.

In their motions to dismiss, defendants argue that all of plaintiff's claims against the individual defendants and Bushkill Township must be dismissed on the merits.  They also contend that plaintiff has failed to state a claim against Coopersmith because (1) Coopersmith was not involved in the alleged constitutional violations and (2) Coopersmith is entitled to qualified immunity.  Finally, they assert that all references in the Complaint to specific amounts of monetary damages sought must be stricken.

The Court addresses each of these arguments in turn.

### 1.    Equal Protection

Although the Complaint is less than clear, it alleges an equal protection claim against the individual defendants under two similar, but distinct, theories: a class-of-one theory and a selective-enforcement theory.  Plaintiff has alleged facts sufficient to state a claim under a class-of-one theory, but not a selective-enforcement theory.  The Court thus denies the motions to dismiss with respect to the class-of-one claim and grants the motions with respect to the selective-enforcement claim.

### a.    Class-of-One Claim

The Equal Protection Clause of the United States Constitution provides that "no state shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  Because the Equal Protection Clause protects against "intentional and arbitrary discrimination" by state agents, a plaintiff may assert a cause of action under the Equal

Protection Clause as a "class of one" even though he does not allege membership in a protected

class.  Village of Willowbrook v. Olech, 528 U.S. 562 (2000).  To establish a class-of-one claim,

a plaintiff must show that (1) the defendant treated him differently from others similarly situated,

(2) the defendant did so intentionally, and (3) there was no rational basis for the difference in

treatment.  Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006) (citing Willowbrook,

528 U.S. at 564).

      As a preliminary matter, defendants assert that Enquist v. Oregon Department of

Agriculture, 553 U.S. 591 (2008), renders the class-of-one theory inapplicable in cases involving

police officer discretion.  (Mem. Law Supp. Defs.' Mot. Dismiss Pl.'s Compl. ("Defs.' Mem.

Law") 7-10.)  In Enquist, the Supreme Court held that a government employee could not assert a

class-of-one claim against her employer.  The Court premised that holding largely on the

discretion the government possesses as an employer, noting that the "government has

significantly greater leeway in its dealings with citizen employees than it does when it brings its

sovereign power to bear on citizens at large."  Id. at 599.  The Court also stated, however, that the

rationale of Enquist could extend to other state action "involv[ing] discretionary decisionmaking

based on a vast array of subjective, individualized assessments."  Id. at 603.  As an example, the

Court stated that it would not violate the Equal Protection Clause for a police officer stationed on

a busy highway to stop one speeding driver but not another, even if there were no rational basis

for distinguishing between the drivers.  Id. at 603-04.  Relying on this example and, more

generally, the discretion involved in law enforcement, defendants argue that plaintiffs may no

longer assert class-of-one claims against law enforcement officers.

      The Court declines to apply Enquist's holding to this case.  First, the part of Enquist that

discussed the viability of class-of-one claims against law enforcement officers was dicta.

Second, the Seventh Circuit held in a case very similar to this one that a plaintiff had stated a class-of-one claim against law enforcement officers, notwithstanding <u>Enquist</u>.  In that case, <u>Hanes v. Zurich</u>, 578 F.3d 491 (7th Cir. 2009), the plaintiff sued members of the Grayslake, Illinois, police department.  The plaintiff alleged that, "as a result of a long-running . . . dispute," he and his neighbors had repeatedly complained about each other to the police.  <u>Id.</u> at 492.  Yet, allegedly, each time the police responded, "they [would] arrest only [the plaintiff], no matter who initiated the complaint."  <u>Id.</u>  The plaintiff thus alleged that the officers had denied "him—and only him—equal protection of the law, solely for reasons of personal animus."  <u>Id.</u>

The <u>Hanes</u> court held that <u>Enquist</u> did not bar the <u>Hanes</u> plaintiff's class-of-one claim.  Because their actions allegedly were based solely on personal animus, the <u>Hanes</u> officers were not exercising discretion and were not "weighing the factors relevant to [their] duties to the public."  <u>Id.</u> at 496.  Their actions were based on nothing more than their "hate" and lack of respect for the plaintiff.  <u>Id.</u> at 495.  The Seventh Circuit concluded that, at least where a law enforcement officer treats one citizen less favorably than other "solely because of malice," <u>Enquist</u> does not bar a class-of-one claim.  <u>Id.</u>

Finding the reasoning of <u>Hanes</u> persuasive, the Court concludes that <u>Enquist</u> does not preclude plaintiff's class-of-one claim in this case.  The Court must thus address the substantive elements of plaintiff's class-of-one claim.

To satisfy the first element, plaintiff must establish that defendants treated him differently from a similarly situated individual.  To be similarly situated, individuals must be "alike in all relevant aspects," <u>Startzell v. City of Phila.</u>, 533 F.3d 183, 203 (3d Cir. 2008), but need not be "<u>identical</u> in all relevant respects," <u>Southersby Dev. Corp. v. Borough of Jefferson Hills</u>, No. 09-208, 2012 WL 470163, at *7 (W.D. Pa. Feb. 14, 2012).  "Determining whether an individual is

'similarly situated' to another individual is a case-by-case fact-intensive inquiry." Chan v. Cnty. of Lancaster, No. 10-3424, 2011 WL 4478283, at *15 (E.D. Pa. Sept. 26, 2011) (citing Monaco v. Am. Gen. Assurance Co., 359 F.3d 296, 305 (3d Cir. 2004)). For that reason, some courts in this Circuit have stated that "a final determination of this issue is inappropriate at the motion-to-dismiss stage." Id.

Plaintiff has adequately pled this element of his claim. Plaintiff contends that Bushkill Township police officers know of Flyte's many false complaints but do not reprimand her; on the other hand, they "pounce on plaintiff like a 'rabid dog'" whenever Flyte complains about him. (Compl. ¶ 33.) Moreover, plaintiff alleges that he and Flyte are neighbors and both have made repeated complaints to the police about each other. On the present state of the record, this is a sufficient allegation that plaintiff and Flyte are similarly situated.

As to the second element of his claim, plaintiff has asserted that the alleged differential treatment was intentional, directed by Coopersmith because of his friendly relationship with Flyte. This also satisfies the third element, under which plaintiff must allege that there was no rational basis for the differential treatment. See, e.g., Jannuzzi v. Borough of Edwardsville, No. 09-970, 2009 WL 3818427, at *9 (M.D. Pa. Nov. 13, 2009) (denying a motion to dismiss where the plaintiffs alleged they were treated differently because of "personal animus"); Hilton v. City of Wheeling, 209 F.3d 1005, 1008 (7th Cir. 2000) (holding that there is no rational basis for differential treatment based on "reasons of a personal nature unrelated to the duties of the defendant's position"). Plaintiff has thus stated a class-of-one claim against the individual defendants.

b.    Selective Enforcement Claim

Plaintiff also asserts a selective-enforcement claim against the individual defendants.

9

"[D]iscriminatory enforcement of a facially valid law is . . . unconstitutional under the equal protection clause." Hill v. City of Scranton, 411 F.3d 118, 125 (3d Cir. 2005).  The only law specifically referenced in the Complaint is the Bushkill Township noise ordinance.  However, plaintiff makes no allegation that the noise ordinance has been enforced differently against other residents than against him.  His claims arise from officials' enforcement of the noise ordinance against him, contrasted with their alleged failure to enforce a different law against Flyte.  The complaint provides no basis for a selective-enforcement claim.  The Court thus dismisses the selective-enforcement claim without prejudice to plaintiff's right to file an Amended Complaint reasserting that claim if warranted by the facts.

c.   Claims Against Coopersmith

Defendants argue that plaintiff's equal protection claims must be dismissed with respect to Coopersmith, the Bushkill Township Chief of Police, because plaintiff has not alleged that Coopersmith was "personally involved" in the constitutional violations.  Defendants also argue in the second motion to dismiss that Coopersmith is entitled to qualified immunity.  The Court rejects both arguments with respect to the class-of-one claim.

"It is well settled that the doctrine of respondeat superior may not be employed to impose § 1983 liability on a supervisor for the conduct of a subordinate which violates a citizen's constitutional rights." Blanche Road Corp. v. Bensalem Twp., 57 F.3d 253, 263 (3d Cir. 1995), abrogated on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington, PA, 316 F.3d 392 (3d Cir. 2003).  A supervisor may be held liable under § 1983 only if he was personally involved in the alleged wrongs.  "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).

In this case, plaintiff alleges that Coopersmith was personally involved in the alleged equal protection violations.  He contends that Coopersmith "is directing the police officers to allow Ms. Flyte to get away with [her] crimes, because he knows Ms. Flyte personally."  (Compl. ¶ 35.)  Plaintiff further alleges that Flyte has told him that "she knows the chief of police personally, and can get away with anything she wants."  (Id. Background Section.)  This suffices to state a claim against Coopersmith.

Moreover, taking the plausible allegations set forth in plaintiff's Complaint as true, Coopersmith is not entitled to qualified immunity.  The doctrine of qualified immunity provides that government officials are immune from suits for civil damages under § 1983 "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The availability of qualified immunity is a question of law to be decided by the court.  Curley v. Klem, 499 F.3d 199, 207 (3d Cir. 2007).

It is clearly established that differential treatment based on personal animus can provide the basis for a class-of-one claim.  See, e.g., Parks v. Borough of Darby, No. 05-1457, 2005 WL 975505, at *2 (E.D. Pa. Apr. 26, 2005).  Dicta in Enquist relied upon by Coopersmith in support of his qualified-immunity argument, far-removed from the facts of this case, did not unsettle the law that applies to Coopersmith in this case.  Cf. Hanes, 578 F.3d at 497.  This ruling is without prejudice to Coopersmith's right to renew his qualified-immunity claim at the summary judgment stage based on evidence adduced in discovery.

### 2.    Monell Claim

In addition to his claims against individual members of the Bushkill Township Police Department, plaintiff asserts a claim under Monell, 436 U.S. at 658, against Bushkill Township.

Although plaintiff's class-of-one claim survives against the individual defendants, the Court grants defendants' motion to dismiss plaintiff's <u>Monell</u> claim.

Municipalities cannot be held liable under § 1983 under a theory of vicarious liability. <u>Monell</u>, 436 U.S. at 694.  Rather, municipal liability under § 1983 is limited to those circumstances in which the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."  <u>Id.</u>  The Third Circuit has outlined three circumstances under which municipal liability will attach under § 1983:

> First, the municipality will be liable if its employee acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity; second, liability will attach when the individual has policy making authority rendering his or her behavior an act of official policy; third, the municipality will be liable if an official with authority has ratified the unconstitutional actions of a subordinate, rendering such behavior official for liability purposes.

<u>McGreevy v. Stroup</u>, 413 F.3d 359, 367 (3d Cir. 2005) (internal citations omitted).[5]

Plaintiff has failed to state a <u>Monell</u> claim against Bushkill Township.  With respect to the first circumstance outlined in <u>McGreevy</u>, plaintiff alleges that "[t]he Bushkill Township [P]olice [D]epartment's policy is that if someone makes a complaint, the person the complaint is against must change his/her conduct, despite[] the fact that they may be doing nothing wrong." (Compl. ¶ 10.)  However, plaintiff has failed to allege "a direct causal link" between this alleged "policy" and the alleged constitutional violation.  <u>Brown v. Muhlenberg Twp.</u>, 269 F.3d 205, 215 (3d Cir. 2001).  Plaintiff's claim is premised on the contention that <u>he</u>, in particular, was targeted

---

[5]Liability can also be imposed on a municipality based on its failure to train its employees if the plaintiff can show a pattern of violations or where that failure to train demonstrates deliberate indifference on the part of the municipality.  <u>Berg v. Cnty. of Allegheny</u>, 219 F.3d 261, 276 (3d Cir. 2000).  However, none of plaintiff's allegations give rise to a plausible inference of a failure to train, so the Court addresses only the three circumstances set forth in <u>McGreevy</u>.

for differential treatment.  The alleged general policy that a person against whom a complaint is asserted must change his conduct does not correspond to that contention.

With respect to the second and third <u>McGreevy</u> circumstances, plaintiff cannot state a claim under <u>Monell</u>, even taking his allegations regarding Coopersmith's involvement to be true. "Proving that a municipal official is a final policymaking authority is a fundamental element of a § 1983 cause of action against a municipality."  <u>LaVerdure v. Cnty. of Montgomery</u>, 324 F.3d 123, 126 (3d Cir. 2003).   However, "as a matter of Pennsylvania state law, a township Police Chief is not a final policymaker."  <u>Santiago v. Warminster Twp.</u>, 629 F.3d 121, 135 n.11 (3d Cir. 2010) (citing 53 Pa. Cons. Stat. Ann. § 66902); <u>see also</u> <u>Langweiler v. Borough of Newtown</u>, No. 10-3210, 2011 WL 1809264, at *4 n.3 (E.D. Pa. May 12, 2011).  Thus, the Township cannot be held liable under a theory that the allegedly unconstitutional treatment of plaintiff occurred at Coopersmith's direction.  <u>See, e.g.</u>, <u>Langweiler</u>, 2011 WL 1809264, at *4 n.3.

The Court thus grants defendant's motion to dismiss the equal protection claims against Bushkill Township.

### 3.        Void-for-Vagueness Claim

Plaintiff asserts that Bushkill Township's noise ordinance is unconstitutionally vague because it prohibits "noise disturbances" based on a "reasonable person of normal sensitivities" standard, as opposed to a standard based on decibel readings.  (Compl. ¶¶ 24-28.)  According to plaintiff, use of a reasonable-person standard "'opens the door' for people to use [the ordinance] illegitimately."  (<u>Id.</u> ¶ 24.)  The Court rejects this argument.

A statute is void for vagueness if it "'forbids or requires the doing of an act in terms so vague that [persons] of common intelligence must necessarily guess at its meaning and differ as to its application.'"  <u>United States v. Tykarsky</u>, 446 F.3d 458, 472 (3d Cir. 2006) (quoting

Connally v. Gen. Constr. Co., 269 U.S. 385, 391 (1926)).  Among the values underlying the

void-for-vagueness doctrine are the need to provide "fair warning" as to what conduct is

prohibited and to "provide explicit standards" to prevent "arbitrary and discriminatory

application."  Grayned v. City of Rockford, 408 U.S. 104, 108-09 (1972).  However, the

Supreme Court has cautioned that, "[c]ondemned to the use of words, we can never expect

mathematical certainty from our language."  Grayned v. City of Rockford, 408 U.S. 104, 110

(1972).  For that reason, it is constitutional for statutory language to exhibit "flexibility and

reasonable breadth."  Id.

      "[A]nti-noise ordinances that incorporate a 'reasonable person' standard have generally

withstood constitutional scrutiny."  Sharkey's, Inc. v. City of Waukesha, 265 F. Supp. 2d 984,

993-94 (E.D. Wis. 2003) (citing cases).  Many federal courts have upheld ordinances similar to

the ordinance at issue in this case.  See, e.g., Grayned, 408 U.S. at 108-13 (rejecting a vagueness

challenge to a noise ordinance prohibiting "any noise or diversion which disturbs or tends to

disturb the peace or good order" of a school); Humane Soc'y W. Region v. Snohomish Cnty.,

357 F. App'x 144, 146 (9th Cir. 2009) (rejecting a vagueness challenge to a noise ordinance even

though it did not specify the decibel level that would constitute a violation); World Wide St.

Preachers' Fellowship v. Reed, No. 05-2565, 2006 WL 1984614, at *4 (M.D. Pa. July 13, 2006)

(rejecting a vagueness challenge to a noise ordinance prohibiting "any loud or unnecessary noise

which may reasonably be anticipated to annoy, disturb, injure, or endanger the comfort, repose,

peace, health or safety of others").  Likewise, Pennsylvania state courts have upheld similar noise

regulations.  See, e.g., Commonwealth v. Ebaugh, 783 A.2d 846, 850 (Pa. Commw. Ct. 2001)

(upholding an ordinance prohibiting noise that would "annoy or disturb a reasonable person of

normal sensitivities"); Commonwealth v. Solon, 13 Pa. D. & C. 3d 85 (Ct. Com. Pl. Lehigh

Cnty. 1979) (upholding an ordinance prohibiting noise that would "offend a reasonable person" and that must "continue for specific lengths of time before one may be held accountable for violation").

The noise ordinance in this case survives plaintiff's challenge.  It does not prohibit an act "in terms so vague that [persons] of common intelligence must necessarily guess at its meaning." Tykarsky, 446 F.3d at 472.  It enumerates several specific circumstances that constitute a noise violation, and it incorporates an objective reasonable person standard.  Contrary to plaintiff's assertion, the fact that a noise ordinance does not include a specific decibel limitation does not require persons "of common intelligence [to] guess at its meaning."  Tykarsky, 446 F.3d at 472. The Court thus grants the first motion to dismiss with respect to plaintiff's challenge to the Bushkill Township noise ordinance.[6]

### 4.      Motion to Strike Damages

Finally, defendants ask the Court to strike the Complaint's request for a specific amount of monetary damages and all requests for punitive damages.  The Complaint states that plaintiff seeks $250,000 in compensatory damages, $10,000 in punitive damages from Coopersmith, and $5,000 in punitive damages from two Bushkill Township police officers who are not named as defendants in this case.

---

[6]Plaintiff also asserts that the ordinance is unconstitutional as applied to him.  First, he argues that "[t]he Bushkill Township Police have personal knowledge of the fact that Alvera Flyte is not a 'reasonable person' which is a prerequisite to making a complaint pursuant to the ordinance."  (Pl.'s Opp. Mot. Dismiss 12.)  Plaintiff misconstrues the ordinance.  It does not require that the complainant herself be a reasonable person; instead, it requires that the noise about which she complains be of a nature that would offend a reasonable person.  Whether Flyte herself is reasonable person is not relevant to whether plaintiff violated the ordinance.  Moreover, plaintiff's allegation that police officers left their cars running outside his house so that his dog would bark may be relevant to his equal protection claims, but it does not support a claim that the noise ordinance is unconstitutionally vague as applied to him.  The Court rejects plaintiff's as-applied challenge.

The Court grants the motion to strike all references to specific amounts of monetary damages.  Under Local Rule of Civil Procedure 5.1.1, "courts in this District have consistently rejected attempts by plaintiffs to plead specific dollar amounts for unliquidated damages." Jodek Charitable Trust, R.A. v. Vertical Net Inc., 412 F. Supp. 2d 469, 484 (E.D. Pa. 2006).  Local Civil Rule 5.1.1 provides, however, that pleadings may "contain allegations sufficient to establish the jurisdiction of the Court, to reveal whether the case is or is not subject to arbitration under Local Rule 53.2, and to specify the nature of the damages claimed, e.g., 'compensatory,' 'punitive,' or both."  Because the Court's jurisdiction in this case is based on the existence of a federal question, there is no amount-in-controversy requirement.  Moreover, regardless of the amount in controversy, this case is not eligible for compulsory arbitration under Local Civil Rule 53.2 because plaintiff seeks both monetary and injunctive relief.  See E.D. Pa. Civ. R. 53.2.  The Court thus strikes plaintiff's references to specific amounts of monetary damages in the Complaint and will treat the Complaint as stating that plaintiff is seeking both compensatory and punitive damages.

The Court will not strike plaintiff's request for punitive damages against Coopersmith, although, as set forth above, it strikes the reference to a specific amount of punitive damages.  Punitive damages are not recoverable against municipal employees acting in their official capacities.  See, e.g., Lakits v. York, 258 F. Supp. 2d 401, 408 (E.D. Pa. 2003).  However, the complaint, liberally construed, asserts claims against Coopersmith in his personal capacity.  See, e.g., Atwell v. Schweiker, 274 F. App'x 116, 117 (3d Cir. 2007).  Punitive damages are available for such a claim.

The Court strikes plaintiff's requests for punitive damages against Ellis Pysher and Dale Steigerwalt.  Those individuals are not named as defendants in the case, so plaintiff cannot

recover damages from them, punitive or otherwise.

### 5.      Conclusion

For the reasons set forth above, the first motion to dismiss is denied with respect to plaintiff's class-of-one claim against the individual defendants, plaintiff's claim for punitive damages against Coopersmith, and those parts of the motion which relate to service of process. The second motion to dismiss is denied with respect to plaintiff's class-of-one claim against the individual defendants, Coopersmith's argument that he is entitled to qualified immunity, and plaintiff's claim for punitive damages against Coopersmith.  The motions to dismiss are granted in all other respects.

## IV.     MOTION FOR PRELIMINARY INJUNCTIVE RELIEF

Plaintiff filed a motion for preliminary injunctive relief on July 13, 2012.  In the motion, plaintiff asks the Court (1) to enjoin ongoing criminal proceedings against him in state court for his alleged violation of the Bushkill Township noise ordinance, (2) to bar enforcement of the Bushkill Township noise ordinance, and (3) to "relinquish[]" the Bushkill Township Police Department "of jurisdiction of any non emergency complaint arising from or against Ms. Alvera Flyte, or concerning plaintiff."  (Pl.'s Mot. Prelim. Inj. ¶ 10.)  Having carefully reviewed all of the filings of the parties, the Court denies the motion.[7]

### A.      Legal Standard

Federal Rule of Civil Procedure 65 governs district courts' authority to enter preliminary injunctions and temporary restraining orders.  Where a plaintiff seeks a preliminary injunction,

---

[7]A motion for preliminary injunction may be denied without a hearing if "the movant is proceeding on a legal theory which cannot be sustained" or "the movant has not presented a colorable factual basis to support the claim on the merits or the contention of irreparable harm." Bradley v. Pittsburgh Bd. of Educ., 910 F.2d 1172, 1175-76 (3d Cir. 1990).  The Court concludes that such circumstances are present in this case.

he must establish "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  Winter v. Natural Res. Def. Council, 555 U.S. 7, 20 (2008); see also Bimbo Bakeries USA, Inc. v. Botticella, 613 F.3d 102, 109 (3d Cir. 2010).  A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  Winter, 555 U.S. at 22.

B.    Analysis

For separate reasons, each form of injunctive relief sought by plaintiff must be denied. The Court addresses each in turn.

**1.    Injunction of Pending State Proceedings**

First, plaintiff asks the Court to "enjoin the criminal proceedings" pending against him for two violations of the Bushkill Township noise ordinance.  (Pl.'s Mot. Prelim. Inj. ¶ 19.) After summary trials before a Magisterial District Judge, defendant was convicted of both violations on March 2, 2012.  Defendant appealed to the Court of Common Pleas of Northampton County, and his appeal is currently pending.  The next hearing is scheduled for October 31, 2012.

The Court abstains under Younger v. Harris, 401 U.S. 37 (1971), from enjoining the ongoing state-court proceedings.  "For the Younger abstention doctrine to apply, three conditions must be satisfied: (1) state-court proceedings must be ongoing and judicial in nature; (2) the state-court proceedings must implicate important state interests; and (3) those proceedings must afford an adequate opportunity to raise federal claims."  Feingold v. Office of Disciplinary Counsel, No. 11-1459, 2012 WL 2673130, at *2 (3d Cir. July 6, 2012).

All three preconditions to Younger abstention are satisfied in this case.  First, there are

ongoing state judicial proceedings.  See, e.g., O'Neill v. City of Phila., 32 F.3d 785, 790 (3d Cir. 1994).  Second, the proceedings implicate Pennsylvania's important interest in "bringing to justice" those who violate its laws and ordinances, see, e.g., Duran v. Weeks, 399 F. App'x 756, 758 (3d Cir. 2010); O'Neill, 32 F.3d at 792, and in exercising its police power, see, e.g., Antretter v. Pennsylvania, No. 10-1924, at *5 (M.D. Pa. Oct. 8, 2010).  Third, plaintiff has not shown that "state procedural law bar[s] presentation of [his] claims."  Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 14 (1987).[8]  Pennsylvania state courts are empowered to address the constitutionality of local ordinances.  See, e.g., Ebaugh, 783 A.2d 846 (Pa. Commw. Ct. 2001).

"[I]t is inappropriate to abstain under Younger if the plaintiff establishes that '(1) the state proceedings are being undertaken in bad faith or for purposes of harassment or (2) some other extraordinary circumstances exist, such as proceedings pursuant to a flagrantly unconstitutional statute, such that deference to the state proceeding will present a significant and immediate potential for irreparable harm to the federal interests asserted.'"  Getson v. N.J., 352 F. App'x 749, 753 (3d Cir. 2009) (quoting Schall v. Joyce, 885 F.2d 101, 106 (3d Cir. 1989)).  Neither exception applies in this case.

With respect to the first exception, "[a] prosecution or proceeding is conducted in 'bad faith' for abstention purposes when it is brought 'without hope' of success."  Id. (quoting Perez v. Ledesma, 401 U.S. 82, 85 (1971)).  In this case, plaintiff has been convicted of violating the noise ordinance.  It thus cannot be said that the state instituted the proceeding for the purpose of harassment, "without any expectation of success" on the merits.  Id.  Plaintiff has not "pled

---

[8]Plaintiff asserts that during his summary trial, the magistrate cut off his argument regarding the constitutionality of the ordinance.  Even if this is true, plaintiff has produced no evidence that there is any bar to presentation of his constitutional claims before the Court of Common Pleas of Northampton County in his currently pending appeal.

sufficient facts to state a claim of bad faith." Id. at 754 n.4.

Likewise, no "other extraordinary circumstances" exist.  As explained in the Court's ruling on the first motion to dismiss, see supra section III.B.3, the noise ordinance under which the proceedings were instituted is not unconstitutional, much less "flagrantly" so.  Plaintiff alleges procedural improprieties in the proceedings before the Magisterial District Court, including the magistrate's limiting his ability to attack Flyte's credibility as a witness and the fact that the Commonwealth provided the judge with a different noise warning letter than the one plaintiff received.   None of this provides a colorable factual basis for concluding that the state courts are biased against plaintiff.  See Williams v. Gov't of Virgin Islands Bd. of Med. Examiners, 360 F. App'x 297, 300 (3d Cir. 2010) (holding that abstention was appropriate where a plaintiff "presented little, if any, persuasive evidence" that a state disciplinary board was biased).  Plaintiff has presented no evidence from which the Court could infer "an extraordinarily pressing need for immediate federal equitable relief."  Kugler v. Helfant, 421 U.S. 117, 125 (1975).  The Court thus abstains from enjoining plaintiff's pending criminal prosecution in state court.

### 2.      Injunction Against Enforcement of Noise Ordinance

Plaintiff also asks the Court to bar enforcement of the Bushkill Township noise ordinance.  A court may grant a preliminary injunction only where the plaintiff shows "that he is likely to succeed on the merits."  Winter, 555 U.S. at 20.  As stated above, plaintiff's challenge to the ordinance lacks merit; the Court has granted defendants' motion to dismiss the challenge. Plaintiff is not entitled to injunctive relief against enforcement of the noise ordinance.

### 3.      Injunction Against Police Response to Flyte

Finally, plaintiff seeks an injunction "relinquish[ing]" the Bushkill Township Police

Department "of jurisdiction of any non emergency complaint arising from or against Ms. Alvera Flyte, or concerning plaintiff."

"[I]n weighing the consequences of a preliminary injunction [against] the probability of success at final hearing, a district court need not examine every possible theory of recovery in great detail where it appears that under any theory the potential detriment to both the public interest and interested parties tips the balance against the granting of an injunction." Commonwealth of Pa. ex rel. Creamer v. U.S. Dep't of Agric., 469 F.2d 1387, 1388 (3d Cir. 1972). Plaintiff has presented no colorable factual basis for concluding, under any theory, that the balance of equities "tips in his favor" or that the relief requested is "in the public interest." Winter, 555 U.S. at 20. In support of this element of the requested preliminary injunction, plaintiff alleges only that "[c]ontinued violations, will give rise to additional civil rights claims." (Pl.'s Mot. Prelim. Inj. ¶ 10.) Defendants, on the other hand, argue persuasively that it would not be in the public interest to enjoin the Bushkill Township Police Department from responding to complaints involving Flyte or plaintiff.

Plaintiff cites no case, and the Court has found none, in which a court has enjoined an entire police force from responding to the calls of one of its citizens or calls involving one of its citizens. The requested relief is extremely broad; it would extend to incidents that have no relation to the issues in this case. Moreover, it would impose a severe burden on Flyte, who is not a party to this lawsuit. The Court will not divest an entire police force of jurisdiction to perform its duties.

## V.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rule 12(b)(2), (5) & (6) and Rule 12(f) Motion to Strike the "Damages" Section of the

Complaint is denied with respect to plaintiff's class-of-one claim under the Equal Protection Clause against Chief of Police Stanley J. Coopersmith and Bushkill Township Police Officers John Doe Nos. 1-5, plaintiff's claim for punitive damages against Chief of Police Stanley J. Coopersmith, and those parts of the motion which relate to service of process.  Defendants' Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rule 12(b)(2), (5) & (6) and Rule 12(f) Motion to Strike the "Damages" Section of the Complaint is granted in all other respects.

The Motion of Defendants Chief of Police Stanley J. Coopersmith and Bushkill Township to Dismiss Plaintiff's Complaint Pursuant to Federal Rule 12(b)(6) and Rule 12(f) Motion to Strike Portions of the "Damages" Section of the Complaint is denied with respect to plaintiff's class-of-one claim under the Equal Protection Clause against Chief of Police Stanley J. Coopersmith and Bushkill Township Police Officers John Doe Nos. 1-5, plaintiff's claim for punitive damages against Chief of Police Stanley J. Coopersmith, and the argument that Coopersmith is entitled to qualified immunity.  The Motion of Defendants Chief of Police Stanley J. Coopersmith and Bushkill Township to Dismiss Plaintiff's Complaint Pursuant to Federal Rule 12(b)(6) and Rule 12(f) Motion to Strike Portions of the "Damages" Section of the Complaint is granted in all other respects.

Plaintiff's Motion for Preliminary Injunctive Relief is denied.