**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DALE A. THOMAS,** | | **CIVIL ACTION** |
| **Plaintiff,** | | |
| | | |
| **v.** | | |
| | | |
| **BUSHKILL TOWNSHIP,** | | **NO.  11-7578** |
| **STANLEY J. COOPERSMITH,** | | |
| **Chief of Police,** | | |
| **DALE STEIGERWALT, Police Officer,** | | |
| **ELLIS PYSHER, Police Officer,** | | |
| **DAVID MARINO, Police Officer,** | | |
| **MANDY LOHMAN, Police Officer,** | | |
| **CRYSTAL HAPPEL, Police Officer, and** | | |
| **RYAN VRESICS, Police Officer,** | | |
| **Defendants.** | | |

**DuBois, J.**                                                          **March 12, 2014**

**M E M O R A N D U M**

I.    **INTRODUCTION**

This is a civil-rights case arising under 42 U.S.C. § 1983 in which plaintiff, Dale A.

Thomas, alleges that defendants — Bushkill Township, Bushkill Township Chief of Police

Stanley J. Coopersmith ("Coopersmith"), Officer Dale Steigerwalt ("Steigerwalt"), Officer Ellis

Pysher ("Pysher"), Officer David Marino ("Marino"), Officer Mandy Lohman ("Lohman"),

Officer Crystal Happel ("Happel"), and Officer Ryan Vresics ("Vresics")[1] — violated his rights

under the Fourth and Fourteenth Amendments to the U.S. Constitution.  Three Motions to

Dismiss are presently before the Court.  Defendant Coopersmith seeks dismissal of all claims

against him except for plaintiff's class-of-one claim.  All other defendants move to dismiss

plaintiff's Amended Complaint in full.  For the reasons set forth above, defendants' Motions are

---

[1] The Court will refer to Coopersmith, Steigerwalt, Psysher, Marino, Lohman, Happel, and
Vresics as the "individual officer defendants," when referring to them collectively.

granted in part and denied in part.

## II.    BACKGROUND

### A.  Factual History[2]

This case arises out of a longstanding neighborhood feud.  Upon plaintiff's move, in December of 1999, to his former residence at 267 East Moorestown Road in Bushkill Township, Pennsylvania, he "immediately had problems with a next door neighbor by the name of Alvera Flyte."  Am. Compl., Background.  These initial encounters were a harbinger of things to come. Flyte and plaintiff's relationship became increasingly strained as Flyte initiated a campaign to "drive[] [plaintiff] from his home" by purposefully lodging false complaints against him with the Bushkill Township police. *Id.* ¶ 58.  Flyte primarily complained about plaintiff's alleged noise violations, however, she also falsely accused him of stealing her property stones, placing a garbage can on her property, yelling at her, tampering with her property markers, and allowing his dog to run rampant in her yard. *Id. passim*.  Flyte's conduct became so unbearable that plaintiff moved to a new neighborhood in December of 2012. *Id.* Background.

Plaintiff avers that because Chief of Police Coopersmith "knows Alvera Flyte personally," Coopersmith enabled Flyte's harassment by directing his subordinate police officers to allow her false complaints to go unpunished. *See id.* ¶ 54.  Thus, with the exception of a single instance in 2002,[3] "nothing [was] ever done to stop [Flyte] from continually making unwarranted complaints." *See id.* ¶ 41, Damages.  On one occasion, Flyte bragged to plaintiff that "she knows the chief of police personally, and can get away with anything she wants." *Id.* Background.

_____

[2] As required on a motion to dismiss, the Court takes all plausible factual allegations contained in plaintiff's Amended Complaint to be true.

[3] Flyte was cited in 2002 and convicted in 2003 for harassment.  Am. Compl., Background.

During this same timeframe, the Bushkill Township police force also allegedly developed an "extreme hatred" and "extreme animus towards plaintiff."  *See id.* ¶¶ 52, 60.  In their efforts to "ensnare plaintiff," *id.* ¶ 32, and "slap[ him] with another citation" at every opportunity, *id.* ¶ 45, officers "pounce[d] upon plaintiff like a 'rabid dog'" whenever Flyte reported "any slightest alleged infraction," *id.* ¶ 52.  Police continually cited plaintiff for alleged noise violations, harassment, and disorderly conduct or threatened to do so "without ascertaining whether the complaint was legitimate, and in fact, a violation actually occurred."  *Id.* ¶ 12.

In 2008, plaintiff and a friend "went to the police station to speak with Chief of police, Stanley Coopersmith" about Flyte's repeatedly false complaints.  *Id.* ¶ 15.  Coopersmith orally "admitted [to plaintiff] the fact that Ms. Flyte [was] using the police as a means to harass plaintiff," *id.* ¶ 15, but still took no responsive action.  Flyte continued to call the police "solely for the purpose [of] harass[ing] plaintiff," ¶ 16, and officers continued to investigate Flyte's complaints, as if she was a credible complainant.  Plaintiff became "severe[ly] depressed" and "emotional[ly] distressed" as he "c[ame] to the realization that Ms. Flyte w[ould] never be arrested for the crimes she [was] committing against him."  *Id.* Damages.

In 2009, the Bushkill Township Board of Supervisors enacted a new local noise ordinance.  Plaintiff believes that the ordinance, which lacked a specific decibel rating, was passed to target him specifically because "the police kn[ew] plaintiff [was] armed with a decibel meter."  *Id.* ¶ 34.  After passage of the ordinance, Flyte began to complain about plaintiff's dogs' barking when plaintiff was not at home.  *See id.* ¶ 48.  Plaintiff was only made aware of one dog-barking incident prior to 2012, ¶ 51, though, in actuality, he received two citations and was issued at least one warning notice in 2011, *id.* ¶¶ 44, 46.  Police investigated several other dog-barking complaints but concluded they were unfounded.  *See, e.g.*, *id.* ¶¶ 21, 41, 44, 45, 46.

Criminal proceedings were instituted against plaintiff for his two dog-barking citations. On March 2, 2012, plaintiff appeared for trial before Magistrate Judge Doug Schelegl.  *Id.* ¶ 48. Because plaintiff had only received a "generic" noise warning notice prior to appearing in court, which did not state the precise misconduct at issue, plaintiff wrongly "assum[ed] [that] the incidents described in the noise warning notice pertained to his home theater system" rather than "a dog barking issue."  Mem. in Opp. to Defs.' Marino, Lohman & Happel Mot. to Dismiss at 10-11.[4]  Plaintiff alleges that, in order "to cure th[is] procedural defect" at trial, Officer Happel "entered into evidence a different noise warning notice [than] . . . the one plaintiff actually received."  Am. Compl. ¶ 48.[5]  Judge Schelegl found plaintiff guilty.

Plaintiff appealed Judge Schelegl's ruling and received a trial *de novo* in the Court of Common Pleas of Northhampton County on November 14, 2012.  *Id.* ¶ 50.  This time, Officer Happel "presented the actual noise warning notice plaintiff received, but, [falsely] claimed she sent the police report with the noise warning notice."  Mem. in Opp. to Defs.' Marino, Lohman & Happel Mot. to Dismiss at 12.  Officer Steigerwalt also allegedly perjured himself, falsely stating that "plaintiff was warned numerous times about the dog barking."  Am. Compl. ¶ 51. Plaintiff was found guilty of violating the ordinance and fined $4,000.  *Id.*  Plaintiff has been "the only person persecuted by [the] ordinance since its adoption."  *Id.* ¶ 32.

### B.  Procedural Background

Plaintiff filed a *pro se* Complaint in this Court on December 8, 2011 against defendants

---

[4] Because plaintiff is *pro se*, the Court also relies on facts set forth in plaintiff's responses to defendants' Motions to Dismiss to the extent that they amplify allegations in his Amended Complaint.

[5] Plaintiff raised the issue of the falsified evidence at the trial *de novo*.  Am. Compl. ¶ 51.

Coopersmith, Bushkill Township, and five Bushkill Township Police Officer John Does.[6]  In this original Complaint, plaintiff (1) challenged the 2009 Bushkill Township noise ordinance as unconstitutional and (2) alleged that the Bushkill Township police force, at Coopersmith's direction, violated his right to equal protection under the Fourteenth Amendment.

On March 30, 2012 and July 30, 2012, Coopersmith and Bushkill Township jointly moved to dismiss plaintiff's Complaint for failure to state a claim and to strike portions of its "damages" section.  By Memorandum and Order dated August 20, 2012, the Court denied defendants' Motions with respect to plaintiff's class-of-one claims against Coopersmith and Bushkill Township Police Officer John Doe No. 1-5; struck reference in the original Complaint to a specific amount of punitive damages; and rejected Coopersmith's argument that he is entitled to qualified immunity for his alleged equal-protection violation.  The Court granted defendants' Motions in all other respects.

With leave of court, plaintiff filed his Amended Complaint on August 8, 2013.[7] Plaintiff's Amended Complaint, also filed *pro se*, differs from plaintiff's original Complaint in several respects: (1) it substitutes Officers Steigerwalt, Pysher, Marino, Lohman, Happel, and Vresics for the Bushkill Township Police Officer John Does; (2) it contains new allegations that defendants violated plaintiff's rights under the Fourth Amendment and the Due Process Clause of the Fourteenth Amendment; and (3) it offers substantially more factual detail in support of plaintiff's equal-protection claims.

Presently before the Court are (1) Motion of Defendants Chief of Police Stanley J.

---

[6] The "Bushkill Township Police Officer John Doe Nos. 1-5" were added as defendants by Order of the Court dated June 27, 2012.

[7] Prior to plaintiff's filing of the Amended Complaint, Coopersmith filed a Motion for Summary Judgment.  By Order dated July 25, 2013, the Court granted plaintiff leave to amend his original Complaint and denied Coopersmith's Motion for Summary Judgment without prejudice.

Coopersmith and Bushkill Township to Partially Dismiss Plaintiff's Amended Complaint Pursuant to Federal Rule 12(B)(6); (2) Motion of Defendants David Marino, Mandy Lohman and Cystal Happel to Dismiss Plaintiff's Amended Complaint; and (3) Defendants, Officers Dale Steigerwalt, Ellis Pysher, and Ryan Vresic's Motion to Dismiss Plaintiff's Amended Complaint.

## III.    LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a defense of "failure to state a claim upon which relief can be granted" may be raised by motion to dismiss.  In analyzing such a motion, the Court "accept[s] all factual allegations as true, [and] construe[s] the complaint in the light most favorable to the plaintiff."  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231, 233 (3d Cir. 2008) (internal quotation marks omitted).

"To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level . . . .'"  *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  To satisfy the plausibility standard, a plaintiff's allegations must show that defendant's liability is more than "a sheer possibility."  *Id.*  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).

The Court is mindful of the instruction that it should read *pro se* litigants' submissions generously and construe formally imperfect filings in accordance with a *pro se* litigant's substantive intent.  *See Haines v. Kerner*, 404 U.S. 519, 520 (1972).  Post-*Twombly*, the Supreme Court has ruled that dismissing a case because the "allegations of harm [are] too conclusory to

put these matters in issue" would violate the liberal pleading standard afforded to *pro se*

plaintiffs. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (per curiam).

## IV.   DISCUSSSION

### A.  Claims Against the Individual Officer Defendants

Plaintiff's Amended Complaint alleges that the individual officer defendants violated his

rights under (1) the Fourth Amendment; (2) the Due Process Clause of the Fourteenth

Amendment; and (3) the Equal Protection Clause of the Fourteenth Amendment.  Each of these

allegations is addressed in turn.

#### 1.   Fourth Amendment Claims

Plaintiff first alleges that the individual officer defendants, other than Officer Happel,[8]

violated his Fourth Amendment right to be free from "unwarranted governmental intrusions"

when they "knocked on [his] door, invading [his] privacy, to question [him]" about Flyte's

complaints.  *See* Mem. in Opp. to Defs. Marino, Lohman & Happel Mot. to Dismiss at 8.  Such

allegations do not constitute violations of the Fourth Amendment.[9]  "Officers are allowed to

knock on a residence's door or otherwise approach the residence seeking to speak to the

inhabitants just as any private citizen may."  *Estate of Smith v. Marasco*, 318 F.3d 497, 519 (3d

Cir. 2003); *United States v. Cephas*, 254 F.3d 488, 493 (4th Cir. 2001) ("[A]n officer generally

does not need probable cause or reasonable suspicion to justify knocking on the door and then

making verbal inquiry.").  Accordingly, plaintiff's Fourth Amendment claims are dismissed.

---

[8] Plaintiff states that "[t]here is no Fourth Amendment claim against officer [sic] Happel."  Mem. in Opp. to Defs. Marino, Lohman, & Happel Mot. to Dismiss at 10.

[9] Further, to the extent plaintiff bases his Fourth Amendment claims on his allegations that defendants observed plaintiff's home from the street or from Flyte's driveway, these claims do not constitute violations of the Fourth Amendment.  *See, e.g.*, *California v. Ciraolo*, 476 U.S. 207, 213 (1983) (public street); *United States v. Christy*, 810 F. Supp. 2d 1219, 1258 (D.N.M. 2011) (neighboring property), *aff'd*, 739 F.3d 534 (10th Cir. 2014).

2.   <u>Fourteenth Amendment Due Process Claims</u>

Plaintiff's Amended Complaint includes two due-process claims, neither of which is meritorious.  First, plaintiff argues that defendants provided him with inadequate police protection when they failed to arrest, cite, or warn Flyte for her harassment.  As the Supreme Court has recognized, however, "the benefit that a third party may receive from having someone else arrested for a crime generally does not trigger protections under the Due Process Clause, neither in its procedural nor in its 'substantive' manifestations."  *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 768 (2005).  Although there are two limited exceptions to this rule,[10] neither applies to the instant case.

Second, plaintiff alleges that he was denied due process when he was criminally prosecuted in 2012 for violating the Bushkill Township noise ordinance.  Specifically, plaintiff alleges that he received insufficient notice of the charges against him to prepare a trial defense and that officers perjured themselves and falsified evidence in their efforts to secure a conviction.  In *Heck v. Humphrey*,[11] the Supreme Court held that a plaintiff may not bring a § 1983 suit if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence . . . unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated."  512 U.S. 477, 487 (1994).  Because a finding that plaintiff was convicted by improper means "would necessarily imply the invalidity of his conviction[s],"

---

[10] Those exceptions are: (1) cases in which there exists a "special relationship" between the state and an individual such that the state owes the individual an affirmative duty to protect the health and safety of such individual, *see D.R. v. Middle Bucks Area Vocational Tech. Sch.,* 972 F.2d 1364, 1369 (3d Cir.1992) (en banc); and (2) cases in which the state has created a danger that causes harm to an individual.  *See Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 907 (3d Cir.1997); *Kneipp v. Tedder,* 95 F.3d 1199, 1204-05 (3d Cir. 1996).

[11] "[A] number of courts in the Third Circuit and elsewhere have applied *Heck* to bar § 1983 plaintiffs from challenging convictions under local ordinances."  *Shahid v. Borough of Eddystone*, No. 11-cv-2501, 2012 WL 1858954, at *3 (E.D. Pa. May 22, 2012), *aff'd on other grounds*, 503 F. App'x 184 (3d Cir. 2012), *cert. denied*, 134 S. Ct. 92 (2013).

neither of which have been overturned, plaintiff's claims are barred under this doctrine.

### 3.   Fourteenth Amendment Equal Protection Claims

Finally, plaintiff brings both class-of-one and selective-enforcement equal-protection claims against the individual officer defendants under the Fourteenth Amendment.

#### i.   Statute of Limitations

The Court first addresses defendants' argument that plaintiff's equal-protection claims against certain officers are time-barred.  Plaintiff does not dispute that the limitations period for each of his § 1983 claims is two years, *see Sameric Corp. of Del., Inc. v. City of Phil.*, 142 F.3d 582, 599 (3d Cir. 1998), but argues that his claims are nonetheless timely under either the continuing-violation doctrine or the discovery rule.

Neither the continuing-violation doctrine nor the discovery rule extends or tolls the limitations period applicable to plaintiff's claims.  The continuing-violation doctrine is inapplicable because plaintiff has alleged a series of discrete discriminatory acts, each of which is independently actionable.  *See, e.g.*, *McCann v. Astrue*, 293 F. App'x 848, 850 (3d Cir. 2008). Likewise, the Court rejects plaintiff's argument that his claims did not accrue until April 26, 2010, which is when plaintiff gained "possession of 'storm warning' evidence that the [police] actually knew prior to invading his privacy, that [Flyte's] complaint[s] w[ere] [false!]."  Mem. in Opp. to Defs. Marino, Lohman & Happel Mot. to Dismiss at 3 (first and last alterations in original).  Not only is this contention belied by the allegations in plaintiff's Amended Complaint,[12]  but plaintiff confuses the standard for when a litigant is deemed to be on inquiry notice of his claims.  "The knowledge of an injury necessary to begin the statute of limitations

---

[12] For example, plaintiff alleges that as far back as 2008, plaintiff went to speak with Coopersmith about the fact that Flyte "continually call[ed] [the] police, when plaintiff [was] not in violation of said ordinance," and Coopersmith "admitted the fact that Ms. Flyte . . . us[e]d the police as a means to harass plaintiff."  Am. Compl. ¶ 15.

running in a § 1983 claim 'is not notice of every fact which must eventually be proved in support of a claim, but rather knowledge that an injury has occurred.'" *Tomaselli v. Beaulieu*, No. 08-cv-10666, 2013 WL 4780085, at *8 (D. Mass. Aug. 30, 2013) (quoting *Tedeschi v. Reardon*, 5 F.Supp.2d 40, 44 (D. Mass. 1998) (internal punctuation and citation omitted)).  From the beginning of his relationship with the Bushkill Township police department, plaintiff was on notice that the police never reprimanded Flyte her repeated false complaints, while "pounc[ing] on plaintiff like a 'rabid dog,'" whenever Flyte complained about him.  Am. Compl. ¶ 52.  That plaintiff did not have documentary evidence until 2010 of officers' knowledge that Flyte's complaints were false does not extend the date on which his claims accrued .

Absent some other valid exception to the statute of limitations, plaintiff's claims are time-barred to the extent they are based on events outside of the two-year limitations period.  That said, because the Court is unable to determine the date of every discriminatory act, it is not apparent from the face of plaintiff's Complaint which of plaintiff's claims are time-barred.  Further, the record is devoid of evidence as to when Officers Steigerwalt, Pysher, and Vrescis were put on actual notice of plaintiff's claims against them, which is significant under the relation-back doctrine because they were named as defendants in the Amended Complaint after expiration of the statute of limitations applicable to some or all of plaintiff's claims against them.[13]  Accordingly, the Court will deny defendants' Motions to Dismiss plaintiff's equal-

---

[13] Officers Steigerwalt, Pysher, and Vrescis dispute that the relation-back doctrine applies to plaintiff's claims against them.  Actual notice is one of the issues presented by the relation-back doctrine set forth in Federal Rule of Civil Procedure 15(c), under which the joinder of defendants Steigerwalt, Pysher, and Vrescis would relate back to the date of plaintiff's original Complaint.  *Burke v. Chicago Sch. Reform Bd. of Trustees*, 149 F. Supp. 2d 384, 389 (N.D.  Ill.  2001) (noting that the court could not resolve the relation-back issue absent evidence as to "whether the individual defendants had 'such notice of the institution of the action that [they] will not be prejudiced in maintaining a defense on the merits.'" (quoting Fed. Civ. P. 15(c)(3)(A))).

protection claims without prejudice to defendants' right to raise the statute-of-limitations issue

by motion(s) for summary judgment after discovery.  *See Hayward v. Borough of Sharon Hill*,

No. 13-cv-825, 2013 WL 5888293, at *3 (E.D. Pa. Oct. 25, 2013) (declining to dismiss the

plaintiff's *pro se* complaint as untimely because "it would be too problematic and unreliable for

the Court to determine when each wrongful action occurred," but holding that the defendant

could "raise this defense again by way of a motion for summary judgment if and when the dates

for the alleged unlawful actions [were] more readily apparent").

### ii.   Class-of-One Claims

The individual officer defendants, except for Coopersmith, argue that, even if timely

filed, plaintiff's Amended Complaint fails to state equal-protection claims under a class-of-one

theory.  To state a class-of-one claim, a plaintiff must allege that (1) the defendant treated him

differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was

no rational basis for the difference in treatment.  *Hill v. Borough of Kutztown*, 455 F.3d 225, 239

(3d Cir. 2006).  The Court, by Memorandum and Order dated August 20, 2013, denied Motions

to Dismiss identical claims against defendant Coopersmith and the Bushkill Township Police

Officer John Does.  For the same reasons set forth in that Memorandum and Order, plaintiff's

Amended Complaint states viable class-of-one claims, for which defendants are not entitled to

qualified immunity.

### iii.   Selective-Enforcement Claims

The individual officer defendants also seek dismissal of plaintiff's selective-enforcement

claims against them.  To prevail on a selective-enforcement theory, a plaintiff must establish "(1)

that persons similarly situated were not prosecuted and (2) that the decision to prosecute was

made on the basis of an unjustifiable standard, such as race, religion, or some other arbitrary

11

factor." *Dique v. N.J. State Police*, 603 F.3d 181, 184 (3d Cir. 2010).  In his original Complaint, plaintiff brought similar selective-enforcement claims against Coopersmith and the Bushkill Township Police Officer John Does, alleging that their personal animus motivated them to selectively enforce the Bushkill Township noise ordinance.  By Memorandum and Order dated August 20, 2012, the Court dismissed these claims on the ground that plaintiff failed to "alle[ge] that the noise ordinance ha[d] been enforced differently against other residents than against him." *Thomas v. Coopersmith*, No. 11-cv-7578, 2012 WL 3599415, at *5 (E.D. Pa. Aug. 21, 2012).

Plaintiff's Amended Complaint cures this deficiency by asserting that (1) plaintiff has "be[en] the only person persecuted by [the noise] ordinance since its adoption in 2009," Am. Compl. ¶ 32, and (2) defendants have not cited or warned users of firearms under the ordinance, even though their "gun shots have a decibel rating much higher than [plaintiff's] music was ever played," *id.* ¶¶ 36-37.  Although defendants argue that firearm users are not "similarly situated," this is a question of fact, which cannot be determined on a motion to dismiss.  *See, e.g.*, *Kushnir v. Aviva Life & Annuity Co.*, No. 11-cv-7701, 2013 WL 4479196, at *2 (E.D. Pa. Aug. 22, 2013) (DuBois, J.).  Moreover, plaintiff's allegation that he has been the only person ever prosecuted under the ordinance is independently sufficient to state a plausible claim for selective enforcement.  *See, e.g.*, *Cypher v. Cal. U. of Pa.*, 914 F. Supp. 2d 666, 667 (W.D. Pa. 2012) ("disagree[ing] . . . that [p]laintiff must specifically name or identify individuals who were treated differently than he in his complaint").

Finally, because "it has long been established that discriminatory enforcement of a statute or law by state and local officials is unconstitutional," *Holder v. City of Allentown*, 987 F.2d 188, 197 (3d Cir. 1993), the Court concludes that defendants are not entitled to qualified immunity on plaintiff's selective-enforcement claims.  Thus, both plaintiff's class-of-one claims and his

selective-enforcement claims may proceed.

### B. *Monell* Claim Against Bushkill Township

        In addition to asserting § 1983 claims against the individual officer defendants, plaintiff's

Amended Complaint realleges a *Monell* claim against Bushkill Township identical to that

included in his original Complaint.  *Compare* Compl. ¶ 10 ("[T]he Bushkill Township [P]olice

[D]epartment's policy is that if someone makes a complaint, the person the complaint is against

must change his/her conduct, despite, the fact that they may be doing nothing wrong."), *with* Am.

Compl. ¶ 14 (same).  By Memorandum and Order dated August 20, 2012, the Court dismissed

plaintiff's original *Monell* claim without prejudice because, under 53 P.S. § 66902, (1)

"plaintiff . . . failed to allege 'a direct causal link' between this alleged 'policy' and the alleged

constitutional violation"; and (2) "'as a matter of Pennsylvania state law, a township Police Chief

is not a final policymaker.'"[2]  *Thomas*, 2012 WL 3599415, at *7 (quoting *Santiago v.*

*Warminster Twp.*, 629 F.3d 121, 135 n.11 (3d Cir. 2010)).  Plaintiff's Amended Complaint does

nothing to cure these deficiencies; plaintiff's *Monell* claim is based on the same allegedly

unconstitutional conduct, and plaintiff alleges, again, that the Bushkill Township Police

Department's policy was undertaken at Coopersmith's direction.[14]  Accordingly, plaintiff's

*Monell* claim is dismissed.

### C.  Punitive Damages

        Finally, defendants Steigerwalt, Pysher, and Vresics move to dismiss plaintiff's claim for

punitive damages against them on the ground that punitive damages generally are not

---

[14] Plaintiff cites *Watson v. Abington Twp.*, 336 Fed. App'x 163, 167 (2009), for the proposition
that Chief Coopersmith is vested with policymaking authority.  *Watson* is inapposite, however,
because, in *Watson*, it was "*uncontested* that [the police] [c]hief was a municipal policymaker,"
and, thus, the Third Circuit for the U.S. Court of Appeals never reached this issue.  *Id.* (emphasis
added).

recoverable in § 1983 suits against municipal employees acting in their official capacities.  It is true that defendants, "in their capacities as officers . . . , are immune from [p]laintiff's § 1983 punitive damages claims,"  *Lakits v. York*, 258 F. Supp. 2d 401, 408 (E.D. Pa. 2003).  However, plaintiff's Amended Complaint, liberally construed, asserts claims against these officers in their individual capacities, for which punitive damages are available.  The Court will not dismiss plaintiff's claim for punitive damages.

### D.  Plaintiff Will Not Be Granted Leave to Amend

The decision to grant or deny leave to amend is committed to the sound discretion of the Court.  *Gay v. Petsock*, 917 F.2d 7668, 772 (3d Cir. 1990).  In this case, plaintiff is not granted leave to file a second amended complaint on the grounds that any such amendment would be futile and would prejudice defendants.  Not only has plaintiff already been afforded an opportunity to cure the deficiencies in his initial Complaint, which was filed over two years ago, but plaintiff should be well aware of the facts underlying his claims at this stage in the litigation. Fact discovery is well underway, and one motion for summary judgment already has been fully briefed.  Any further amendment would "require [defendants] to expend significant additional resources to conduct discovery and prepare for trial" and further delay the resolution of this dispute.  *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004) (quoting *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)).

### V. CONCLUSION

The Court grants defendants Motions to Dismiss with prejudice as to

(1) plaintiff's § 1983 claims for violations of the Fourth Amendment; (2) plaintiff's § 1983 claims for violation of plaintiff's due-process rights; and (3) plaintiff's *Monell* claim against Bushkill Township.  Defendants' Motions are denied in all other respects.  The Court's denial of

14

defendants' Motions with respect to their statute-of-limitations defense to plaintiff's equal-protection claims is without prejudice to their right to raise this issue by way of motion(s) for summary judgment.  Plaintiff will not be given leave to file a second amended complaint on the ground that further amendment would be futile, cause undue delay, and prejudice defendants. Plaintiff's class-of-one and selective-enforcement claims against the individual officer defendants remain in the case.

An appropriate order follows.