## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DALE A. THOMAS,** <br>             **Plaintiff,** <br><br>     **v.** <br><br> **STANLEY J. COOPERSMITH,** <br> **Chief of Police,** <br> **DALE STEIGERWALT, Police Officer,** <br> **ELLIS PYSHER, Police Officer,** <br> **DAVID MARINO, Police Officer,** <br> **MANDY LOHMAN, Police Officer,** <br> **CRYSTAL HAPPEL, Police Officer, and** <br> **RYAN VRESICS, Police Officer,** <br>             **Defendants.** | **CIVIL ACTION** <br><br><br><br> **NO.  11-7578** |

**Dubois, J.**                                                                                    **January 19, 2016**

### M E M O R A N D U M

### I.      INTRODUCTION

This litigation tells the story of a dispute between neighbors that escalated into a federal case. *Pro se* plaintiff Dale A. Thomas alleges that the defendants, Bushkill Township Chief of Police Stanley J. Coopersmith and a group of current and former Bushkill Township police officers, violated his right to the equal protection of the laws as guaranteed by the Fourteenth Amendment of the United States Constitution. The events leading to Thomas's claims occurred during a decade-long conflict with his former neighbor, Alvera Flyte.

Presently before the Court are defendants Chief of Police Coopersmith and Police Officers David Marino, Mandy Lohman, and Crystal Happel's Motion for Summary Judgment and defendants Police Officers Dale Steigerwalt, Ellis Pysher, and Ryan Vresics's Motion for Summary Judgment. Also before the Court is a letter request from Thomas, dated October 3, 2015, seeking to compel certain additional discovery from defendants and for sanctions for

alleged discovery violations. For the reasons that follow, the Court (1) denies Thomas's letter request to compel discovery and for sanctions, except to the extent that he seeks return of a video surveillance tape he provided to defendants; and (2) grants defendants' Motions for Summary Judgment, and enters judgment in favor of all defendants and against Thomas.

## II.     BACKGROUND

### A.  Factual History

The relevant facts as set forth in the parties' briefs and accompanying exhibits are summarized below. The facts are not contested except as otherwise noted.

#### 1.  Parties and Neighbor Dispute Background

Plaintiff, Dale A. Thomas, is the former owner of residential property located at 267 Moorestown Road, Wind Gap, Pennsylvania 18091 ("the property"). Defendants' Joint Statement of Material and Undisputed Facts in Support of the Motion for Summary Judgment ("Defendant's Undisputed Facts") ¶ 1. Thomas resided at the property from December 1999 until December 29, 2012. *Id.*

During this time, Alvera Flyte, a third-party not named in this action, owned and resided at a residential property next door to Thomas at 271 East Moorestown Road. Defendant's Undisputed Facts ¶ 12; Defendant's Motion for Summary Judgment, Ex. 1, February 22, 2013, Deposition of Dale Thomas ("Thomas Deposition"), at 29. The two houses on the properties are approximately forty-nine feet apart. Thomas Deposition, at 30. Shortly after Thomas purchased the property and moved into the residence in the fall of 1999, a dispute arose between Thomas and Flyte. Defendant's Undisputed Facts ¶ 12; Thomas Deposition, at 23. The dispute, which involved a variety of issues, continued throughout the time that Thomas resided at the property. *Id.*

The property is located within Bushkill Township, Pennsylvania, and is within the patrol area of the Bushkill Township Police Department ("BTPD"). Beginning in 2002, Flyte began to call BTPD to report issues with Thomas. Defendants' Undisputed Facts ¶¶ 14, 16, Thomas Deposition, at 26-27. Thomas estimates that during the twelve years he resided at the property, Flyte contacted the BTPD approximately eighty-two times with complaints about him and/or another next door neighbor of Flyte's. Thomas Deposition, at 50.  The subject of Flyte's reports to the BTPD varied, including noise complaints and allegations of disturbing the peace, moving or disrupting her garbage cans, harassment, trespassing, and theft of property. Defendants' Undisputed Facts ¶ 16. During the twelve years he resided at the property, Thomas was cited or given informal warnings by BTPD officers several times in response to Flyte's reports. Defendants' Undisputed Facts ¶ 17; Thomas Deposition, at 51.

Defendants are various BTPD officers who worked for BTPD during the time Thomas resided at the property. Defendant Stanley J. Coopersmith served as Chief of Police for BTPD during all relevant times. Defendants' Undisputed Facts ¶ 2. Defendant David Marino is a Corporal with BTPD. *Id.* ¶ 3. Defendants Crystal Happel, Mandy Lohman, and Ryan Vresics are Officers of BTPD. *Id.* ¶ 4, 5, 9. Defendant Dale Steigerwalt is a retired Officer of BTPD and was employed by BTPD as an Officer during the relevant times. *Id.* ¶¶ 7-8. Defendant Ellis Pysher is a former Officer of BTPD and was employed by BTPD as an Officer during the relevant times. *Id.* ¶¶ 12-14. The Court refers to the individual officer defendants collectively as "the BTPD officer defendants."

Thomas claims that "Alvera Flyte has made the statement that she knows the Chief of Police personally and can get away with anything she wants in my presence." Affidavit of Dale

Thomas ¶ 7, Exhibits of Plaintiff, at 12.[1] In addition, Thomas avers that "Stanley Coopersmith made the statement that Alvera Flyte is using the police as a means to harass me, and hence was aware of the fact that she was harassing me." *Id.* ¶ 10.

Because the gravamen of plaintiff's claims is that he was treated differently from Flyte and unfairly punished without justification, the Court briefly summarizes each of the BTPD police reports of record involving Flyte's complaints about Thomas. In addition, the Court addresses citations and warnings that Flyte received following reports from Thomas. Thomas avers generally that all of the warnings and citations lacked a basis and that the officers involved misrepresented the underlying events. *See, e.g.*, Plaintiff's Memorandum in Opposition to Officers Dale Steigerwalt, Ellis Pysher, & Ryan Vresics's Motion for Summary Judgment ("Plaintiff's Steigerwalt Opposition"), at 1. For purposes of this summary, the Court will note only those instances in which Thomas has identified a specific dispute of fact.

### 2.   Reports from Flyte to BTPD Against Thomas

On April 28, 2003, Flyte made a report to BTPD regarding loud music coming from Thomas's home. BTPD IIR 03-1050,[2] Thomas Deposition, Ex. P-11. Defendant Pysher responded to the call and gave Thomas a verbal warning to turn down his music. *Id.* No citation was issued.

On December 13, 2003, after Flyte reported a dispute to BTPD over lawn clippings on Thomas's property from a tree on Flyte's property, Thomas was cited for harassment by

---

[1] Plaintiff filed a document captioned "Exhibits of Plaintiff" (Doc. No. 112, filed November 18, 2015) in support of his responses to defendants' Motions for Summary Judgment. Because the exhibits are not clearly marked, citations to specific exhibits in this document are to page numbers, rather than exhibit numbers.

[2] Because many BTPD police reports are referred to and attached as exhibits by both parties, in the interest of clarity, citations to police reports will include the relevant BTPD Incident Investigation Report ("IIR") number.

defendants Lohman and Pysher. BTPD IIR 03-3307, Exhibits of Plaintiff, at 32. Following a hearing on the citation in 2004, Thomas was found not guilty. *Id.* Defendants' Undisputed Facts ¶ 18; Thomas Deposition, at 35-36.

On April 25, 2004, Flyte made a complaint to BTPD regarding loud music coming from Thomas's house. BTPD IIR 04-1021, Thomas Deposition, Ex. P-14. BTPD Officer Pakphoom Nimtien, a third party not named in this action, responded to the complaint. *Id.* After interviewing Flyte, Nimtien heard loud noise coming from Thomas's house. *Id.* Nimtien was unable to wake Thomas by knocking on the door, and departed without issuing a warning or citation. *Id.*

On May 2, 2004, Flyte made another report to BTPD regarding loud music. BTPD IIR 04-1072. Officer Nimtien again responded to the complaint. *Id.* Nimtien gave Thomas a verbal warning to lower the volume and to "keep it down after dark." *Id.* No citation was issued. *Id.*

On July 5, 2004, Flyte made a complaint to BTPD regarding loud music coming from Thomas's car. BTPD IIR 04-1629, Thomas Deposition, Ex. P-13. Defendant Pysher responded to the call and interviewed Flyte. *Id.* Flyte said that Thomas returned home in his car with loud music playing and that she observed Thomas urinating on the side of her house. *Id.* Pysher then interviewed Thomas, who denied being on Flyte's property. *Id.* Pysher gave Thomas a verbal warning to stay on his own property and leave Flyte alone. *Id.*

On January 3, 2005, following a report to BTPD from Flyte regarding loud music, defendant Pysher cited Thomas for violating Bushkill Township's noise ordinance. Defendants' Undisputed Facts ¶ 18; Thomas Deposition, at 53-55. Pysher stated in his report that he heard a loud stereo coming from Thomas's home on multiple visits to the property that night. BTPD IIR

05-0017, Thomas Deposition, Ex. P-1. Thomas was ultimately found guilty of violating the noise ordinance following a hearing on May 24, 2005, and paid a fine. Thomas Deposition, at 54.

On April 3, 2005, Flyte made a report to BTPD about loud music coming from Thomas's home. BTPD IIR 05-0840, Thomas Deposition, Ex. P-15. A BTPD officer responded and spoke with Flyte.[3] *Id.* The officer interviewed Thomas, who said that Flyte was only making the report because of a civil law suit he had filed against Flyte. *Id.* The officer did not hear any music at the scene and departed without issuing a warning or citation. *Id.*

On July 12, 2005, following a report to BTPD from Flyte regarding a dispute with Thomas, Thomas was cited for harassment and disorderly conduct by BTPD Detective Randy Knauss, a third party not named in this action. Defendants' Statement of Undisputed Facts ¶ 18; Thomas Deposition, at 51-52. Knauss responded to multiple calls from Flyte over the course of the day. BTPD IIR 05-1720, Thomas Deposition, Ex. P-23; BTPD IIR 05-1722, Thomas Deposition, Ex. P-22.  Knauss's report summarizes the dispute as involving "theft of rocks." *Id.* Thomas and Flyte were involved in an argument over Thomas moving rocks along the boundary of their respective properties and throwing chunks of concrete into Flyte's yard. *Id.* The disputes culminated in Thomas shouting obscenities at Flyte and the police. *Id.*  Thomas was ultimately found not guilty of disorderly conduct but guilty of harassment, and paid a $300 fine. Thomas Deposition, at 53.

On September 20, 2007, Flyte made a complaint to BTPD "in regards to her observing her neighbor stealing her property marker." BTPD IIR 07-2976, Exhibits of Plaintiff, at 18. Defendants Marino and Lohman responded to the call. *Id.* Flyte told officers that she had planted a stake between the two properties to mark the property line and that she had seen Thomas

---

[3] The copy of BTPD IIR 05-0840 in the record is missing the first page and the identity of the officer who responded to the complaint is not specified.

tampering with the marker. *Id.* The officers "attempted to pull the stake out of the ground and the stake was very secure that [sic] it could not be removed by pulling it." *Id.* The officers interviewed Thomas, who informed them that he had not touched the property marker. *Id.* Observing no other evidence to substantiate the report, the officers departed the scene without issuing a warning or citation. *Id.*

On September 21, 2007, Flyte made another complaint to BTPD about Thomas moving a "property pin marker" between the two properties. BTPD IIR 07-2988, Exhibits of Plaintiff, at 15. Defendants Marino and Lohman responded to the complaint. *Id.* After interviewing Flyte, the officers inspected the property. *Id.* In his report, Marino stated that "the property marker was taken out of the ground," but after searching for the marker, the officers were unable to locate it. *Id.* With no further evidence, the officers departed the scene without speaking to Thomas or issuing a warning or citation. *Id.*

On November 25, 2007, Flyte called BTPD to report loud noise coming from Thomas's home. BTPD IIR 07-3797, Exhibits of Plaintiff, at 26. Defendant Vresics responded to the call, but did not hear any noise coming from Thomas's property. *Id.* Vresics did not speak to Thomas and no warning or citation was issued. *Id.*

On January 19, 2008, Flyte made a complaint to BTPD concerning loud music coming from Thomas's home. BTPD IIR 08-0187, Thomas Deposition, Ex. P-18. Defendant Vresics responded to the complaint. *Id.* In his report, Vresics stated that he could hear music from outside of Thomas's house. *Id.* Vresics spoke to Thomas and asked him to turn the music down, and Thomas complied. *Id.* Vresics gave Thomas a verbal warning concerning the music. *Id.* In his report, Vresics further noted that "Dale admitted indirectly that he was purposely trying to annoy his neighbor, but believed he was doing so within the boundaries of the [noise]

ordinance." *Id.* Thomas disputes that he made this statement to Vresics. Affidavit of Dale Thomas ¶ 20, Exhibits of Plaintiff, at 13.

On February 15, 2008, Flyte reported loud music on Thomas's property to BTPD. BTPD IIR 08-0457, Thomas Deposition, Ex. P-17. Defendant Vresics responded to the call. *Id.* Vresics noted in his report that, while the bass was audible outside of Thomas's home, the music was not loud enough to be disturbing. *Id.* After speaking with both Thomas and Flyte, Vresics asked Thomas to turn the music down and departed without issuing a citation. *Id.*

On February 28, 2008, Flyte made a complaint to BTPD regarding loud music on Thomas's property. BTPD IIR 08-0583, Exhibits of Plaintiff, at 16. Defendant Marino and BTPD Officer Josh Miller, a third party not named in this action, responded to the complaint. *Id.* The officers interviewed Flyte but did not hear any music coming from Thomas's home. *Id.* The officers spoke with Thomas at his home and "were able to hear the bass from Dale's television but the noise was not in any way excessive." *Id.* The officers departed without issuing a warning or citation. *Id.*

On May 25, 2008, Flyte called BTPD to report loud music coming from Thomas's garage. BTPD IIR 08-1480, Exhibits of Plaintiff, at 34. Defendant Pysher responded to the complaint. *Id.* In his report, Pysher noted that "Thomas was in fact playing a radio in his garage but it was not very loud at all." *Id.* Pysher informed Flyte that the music was not loud enough to cite Thomas. *Id.* In his report, Pysher explained that he believed "it was not the fact that there was loud music . . . but it was the type of music that Thomas was playing that upset Alvera." *Id.* Pysher advised Flyte that she could make a civil complaint, and departed without issuing a warning or citation. *Id.*

8

On January 10, 2009, Flyte made a report to BTPD about loud music coming from Thomas's home. BTPD IIR 09-0085, Thomas Deposition, Ex. P-21. Officer Miller responded to the call. *Id.* Miller interviewed both parties. *Id.* Miller determined that while the noise was audible outside of Thomas's home, Thomas was not in violation of the ordinance. *Id.* Miller warned Flyte that she could be cited for harassment for making unfounded complaints and warned Thomas to turn down the music. *Id.* No citations were issued. *Id.*

On February 8, 2010, Flyte called BTPD to report a barking dog in Thomas's yard. BTPD IIR 10-0324, Exhibits of Plaintiff, at 20. Defendant Happel responded to the report. *Id.* After arriving at the scene and interviewing Flyte, Happel waited outside Thomas's home but did not hear a dog barking. *Id.* Happel returned twice more that evening but did not hear a dog barking. *Id.* No warning or citation was issued. *Id.*

On June 27, 2010, Flyte made a report to BTPD about Thomas alleging "criminal mischief." BTPD IIR 10-1594, Exhibits of Plaintiff, at 29-30. BTPD Officer John Zwally, a third party not named in this action, responded to the report along with defendant Vresics. *Id.* Zwally spoke with Flyte who told him that Thomas was "putting stakes in the ground and she feels that they are on her property." *Id.* Zwally informed Flyte that this was a civil matter that the BTPD did not deal with. *Id.* The officers departed without speaking to Thomas or issuing a warning or citation. *Id.*

On February 26, 2011, following a report to BTPD from Flyte regarding loud music on Thomas's property, defendant Steigerwalt gave Thomas a verbal warning for violating Bushkill

Township's noise ordinance. BTPD IIR 11-0452, Exhibits of Plaintiff, at 40.[4] Following a formal complaint from Flyte, Thomas was sent a Noise Violation Warning Notice on March 18, 2011. *Id.*

On March 27, 2011, Flyte made a report to BTPD of loud noise coming from Thomas's television. BTPD IIR 11-0669, Exhibits of Plaintiff, at 42. Defendant Steigerwalt responded to the call, along with Officer Miller. *Id.* The officers did not hear any loud noise outside of Thomas's home. *Id.* After speaking with Flyte, the officers informed her that the noise was at an acceptable volume. *Id.* The officers did not speak to Thomas, and no warning or citation was issued. *Id.*

On May 25, 2011, Flyte called BTPD to report a barking dog in Thomas's yard. BTPD IIR 11-1103, Exhibits of Plaintiff, at 35. Defendant Pysher responded to the complaint. *Id.* Pysher was at home and off duty at the time, but his home was located close to Thomas's property. *Id.* Pysher sat in the driveway of his property for twenty minutes but did not hear any dogs barking. *Id.* No warning or citation was issued. *Id.*

Also in 2011, Flyte made another complaint to BTPD regarding loud "rumbling" and "bumping" noises from Thomas's home. BTPD IIR 11-1791, Exhibits of Plaintiff, at 31. Defendant Vresics responded. *Id.* After arriving at the scene, Vresics "could faintly hear some music or a movie playing inside" of Thomas's home, but he did not speak to Thomas or issue a warning or citation. *Id.*

On September 11, 2011, Flyte made a report to BTPD about loud music coming from Thomas's home. BTPD IIR 11-2130, Thomas Deposition, Ex. P-16. Defendant Steigerwalt

---

[4] There are two versions of Steigerwalt's "Supplemental Summary" to this report, which appears to have been written after the incident, on March 16, 2011, following Flyte's formal complaint. *See* Exhibits of Plaintiff, at 40-41. One version includes additional detail regarding the conversation between Steigerwalt and Thomas on February 26, 2011. *Id.* at 40.

responded to the call. *Id.* In his report, Steigerwalt noted that "you could hear the base [sic] speaker coming from" Thomas's home. *Id.* Steigerwalt gave Thomas a verbal warning to turn down the music. *Id.* No citation was issued. *Id.* Thomas believes that this incident actually occurred on September 21, 2011, and that the date of the incident report was subsequently altered. Affidavit of Dale Thomas ¶ 23, Exhibits of Plaintiff, at 13.

On October 15, 2011, Flyte called BTPD to report a barking dog in Thomas's yard. BTPD IIR 11-2450, Exhibits of Plaintiff, at 36. Defendant Pysher responded to the complaint. *Id.* Pysher explained in his report that he observed a dog barking outside of Thomas's home. *Id.* Pysher was unable to reach Thomas by knocking on his door. *Id.* Pysher noted that "due to the fact I do not know if Dale had received a warning notice from the incident 11-2217 on 09/19/2011[,] I did fill out a warning notice this time and also noted both incidents on the notice and had Lois [a BTPD secretary] send it to Mr. Thomas." *Id.*

On October 18, 2011, Flyte made a complaint to BTPD regarding a barking dog on Thomas's property. BTPD IIR 11-2461, Exhibits of Plaintiff, at 21. Defendant Happel responded to the call. *Id.* Happel noted in her report that after sitting outside of Thomas's home, she heard a dog bark constantly for "approximately 5 minutes." *Id.* Happel attempted to make contact with Thomas by knocking on the door and having dispatch call his home, but was unable to reach him. *Id.* Happel's report notes that no further warning was given because "it was confirmed through [the] Secretary . . . that a certified letter for the Noise violation warning notice was sent out to Mr. Thomas on Tuesday October 18, 2012 during dayshift hours." *Id.*

In October 2011, Thomas received a "Noise Violation Warning Notice" dated October 15, 2011, from Pysher. Exhibits of Plaintiff, at 25, 39. This Notice, referred to in Pysher's report dated October 15, 2011, stated "The reported incident took place on 9/21/2011 and 10/15/11 at

11

04:51 on 09/21 and 23:21 on 10/21/2011."[5] *Id.* The Notice stated that it constituted a formal written warning, as provided for in the Township of Bushkill Noise Ordinance § 2009-1. *Id.* The Notice further stated that further violation within six months would result in summons and a fine of up to $1000. *Id.*

On October 23, 2011, following a report to BTPD from Flyte regarding a barking dog on Thomas's property, Thomas was cited by defendant Happel for violating Bushkill Township's noise ordinance. BTPD IIR 11-2497, Thomas Deposition, Ex. P-3; Thomas Deposition, Ex. D-570. In Happel's report, she stated that she observed two dogs behind Thomas's residence barking. *Id.* The citation was formally issued after Flyte filed an official complaint. *Id.*; Thomas Deposition, Ex. D-568. On November 6, 2011, following a report to BTPD from Flyte regarding a barking dog on Thomas's property, Thomas was cited by Steigerwalt for violating Bushkill Township's noise ordinance. BTPD IIR 11-2639, Exhibits of Plaintiff, at 45-46. Steigerwalt noted in his report that he was at Thomas's property for "exactly 17 minutes and the German Shepard barked the entire time." *Id.* The citation was formally issued after Flyte filed an official complaint. Thomas Deposition, Ex. D-571.

Thomas appealed both of these citations to the Court of Common Pleas of Northampton County, Pennsylvania. Defendants' Undisputed Facts, Ex. 16; *Commonwealth v. Thomas*, Summary Appeal Nos. 2012-74, 2012-75 (Pa. Ct. Common Pleas, Northampton Cty., Nov. 12, 2014). Thomas was found guilty of both noise violations and fined $4000. *Id.* at 55. In making the determination that Thomas was guilty, the court stated on the record, "I did not accept Flyte's testimony. I found it false and contradictory. But I did find the two Bushkill Township police officers' testimony to be compelling." *Id.* at 56. After Thomas informed the court that he was

_____

[5] This reference to a noise violation on "9/21" appears to be the basis for Thomas's belief that the date of BTPD IIR 11-2130 was subsequently altered to September 11, 2011.

moving away from the property at the end of 2012, the fine was suspended and the court imposed a condition that the fines would be vacated if Thomas did in fact move at the end of the year. *Id.* at 56-57. Thomas moved out of the property on December 29, 2012. Defendants' Statement of Undisputed Facts ¶ 1.

### 3.   Reports from Thomas to BTPD Regarding Flyte

On October 8, 2002, Thomas called BTPD to report that Flyte was harassing him by throwing lawn waste on his property and using her garbage cans to block his driveway. BTPD IIR 02-2281, Thomas Deposition, Ex. P-20. Officer Knauss responded to the call and spoke with both parties. *Id.* Knauss issued a verbal warning to Flyte and stated in his report that "next time one of the parties will be cited." *Id.*

On October 27, 2002, Thomas made a complaint to BTPD that Flyte was harassing him while he was working in his garage. BTPD IIR 02-2448, Thomas Deposition, Ex. P-5. Knauss responded to the complaint and spoke with Thomas and Flyte regarding the dispute, which involved dust produced by work Thomas was doing on his home. *Id.* Based on his investigation, Knauss cited Flyte for harassment. *Id.*

On July 10, 2003, Thomas made a complaint to BTPD regarding Flyte harassing him by kicking his garbage cans over. BTPD IIR 03-1849, Thomas Deposition, Ex. P-6. Defendant Marino responded to the complaint and interviewed Thomas and Flyte, and another neighbor. *Id.* Marino told Thomas that the ongoing dispute between the neighbors "has become more of a civil problem" and that Thomas should file a civil complaint. *Id.* No citation was issued. *Id.*

On April 15, 2008, Thomas made a complaint to BTPD regarding Flyte dumping garbage on his property. BTPD IIR 08-1070, Thomas Deposition, Ex. P-2. Defendant Lohman responded to the complaint and spoke with Thomas at his home. *Id.* In her report, Lohman states that

Thomas accused Flyte of throwing "a white rod" onto Thomas's lawn. *Id.* Lohman explained that "Dale [Thomas] became irritated and informed this Officer that he is just tired of the neighbor [Flyte] getting away with everything and him getting in trouble." *Id.* Because there was no evidence of the alleged garbage dumping, Lohman departed the scene without speaking with or citing Flyte. *Id.*

### B.  Procedural History

On December 8, 2011, Thomas filed a *pro se* Complaint in this Court.[6] The Complaint named as defendants "The Chief of Police, Bushkill Township Police Department, & Bushkill Township." The Complaint averred that "The Bushkill Township Police Department deliberately allowed Ms. Flyte to rob plaintiff of the reasonable use and enjoyment of his property." Compl.  ¶ 37. The Complaint also challenged the constitutionality of Bushkill Township's noise ordinance, which had been amended in 2009 to set the level of permitted noise volume to that tolerable by a "reasonable person of normal sensitivities," rather than a specific decibel level. Compl. ¶¶ 24-28. Thomas subsequently filed a Motion for Preliminary Injunctive Relief. Defendants filed two separate Motions to Dismiss for failure to state a claim and a Motion to Strike references to specific dollar amounts in the Complaint.

By Order dated June 27, 2012, the Court granted Thomas's request included in his response to the first Motion to Dismiss to amend the caption of the case and amended the caption to delete Bushkill Township Police Department as a defendant and add "Bushkill Township Police Officers John Doe 1-5" as defendants. By Memorandum and Order dated August 20, 2012, the Court granted in part and denied in part defendants' Motions to Dismiss. The Court construed Thomas's Complaint as stating class-of-one and selective-enforcement claims based

---

[6] The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

on the Equal Protection Clause of the Fourteenth Amendment against the individuals and the Township, and a First Amendment void-for-vagueness challenge to the noise ordinance. The Court granted the Motions to Dismiss the *Monell* claims against the Township and the First Amendment challenge. The Court also granted defendants' Motion to Strike references in the Complaint to a specific amount of punitive damages. The Court denied the Motions to Dismiss Thomas's Fourteenth Amendment claims under both the class-of-one and selective-enforcement theories against the individual defendants. The Court also denied Thomas's Motion for Preliminary Injunctive Relief.

The parties then proceeded with discovery. Following partial discovery, on March 22, 2013, Thomas filed a Motion for Leave to File an Amended Complaint. The Court granted the Motion by Order dated July 13, 2013. On August 14, 2013, Thomas filed an Amended Complaint. The Amended Complaint named as defendants Chief of Police Coopersmith, Officers Steigerwalt, Pysher, Marino, Lohman, Happel, and Vresics, and Bushkill Township. The Amended Complaint asserted claims against the individual defendants based on "the right to be free from unwarranted governmental intrusions, under the Fourth Amendment" and "unequal application of the law and selective withdrawal of any police protection afforded, by the Due Process & Equal Protection Clause of the Fourteenth Amendment of the United States Constitution." The Amended Complaint also asserted a claim against the Township of Bushkill "for the polices adopted by them as set forth in the [Amended C]omplaint."

Defendants filed three Motions to Dismiss: one on behalf of the Township and Coopersmith, one on behalf of Pysher, Steigerwalt, and Vresics, and one on behalf of Happel, Lohman, and Marino. By Memorandum and Order dated March 12, 2014, the Court granted in part and denied in part the Motions to Dismiss. The Court granted defendants' Motions to

15

Dismiss Thomas's Fourth Amendment claims and Fourteenth Amendment due process claims asserted against the individual defendants, and the *Monell* claim asserted against the Township. The Court denied defendants' Motions to Dismiss the class-of-one and selective-enforcement claims pursuant to the Equal Protection Clause asserted against the individual defendants. This denial was without prejudice to defendants' right to raise statute of limitations defenses by motion(s) for summary judgment following completion of discovery.

Discovery closed on August 28, 2015. On September 25, 2015, defendants Chief of Police Coopersmith and Officers Happel, Lohman, and Marino filed a Motion for Summary Judgment, and Officers Pysher, Steigerwalt, and Vresics filed a separate Motion for Summary Judgment. These Motions are fully briefed and ripe for decision at this time. In addition, on October 4, 2015, Thomas filed a letter request dated October 3, 2015, to compel further discovery and for sanctions. For the reasons that follow, the Court denies in part and grants in part Thomas's letter request, and grants the Motions for Summary Judgment in their entirety.

## III.    DISCUSSION

### A.  Thomas's Letter Request to Compel Discovery and For Sanctions

By letter dated October 3, 2015, Thomas requested an order compelling production of certain additional documents and materials. Specifically, Thomas seeks (1) "a second noise warning notice pertaining to the dogs, which the [Pennsylvania] magistrate Doug Schlegel made a copy of, and labeled the noise warning notice pertaining to the dogs;" (2) an order compelling defendant Happel to testify regarding her arrest of Richard Bizousky, a third party not named in this action; (3) the return of "a surveillance tape [Thomas] produced through discovery which shows what the dogs are barking at;" and (4) "a court order upon the Northampton County Communications Center to produce tapes of Alvera Flyte's calls allegedly made on September

16

11th at 12:03 a.m., instead of September 21st of 2011 between 10:30 and 11:30 at night." Thomas also seeks unspecified sanctions against defendants for these alleged discovery violations. All such requests are denied, except for one—counsel for defendants shall return the surveillance tape produced by Thomas during discovery.

### 1.  Discovery Background

Following numerous discovery disputes between the parties, by Order dated September 22, 2014, the Court referred the case to United States Magistrate Judge Thomas J. Rueter "for the scheduling of a discovery conference to address and resolve all outstanding discovery issues."

Following a discovery hearing with *pro se* plaintiff and counsel for defendants, Judge Rueter issued an Order dated October 24, 2014, disposing of all then-pending discovery issues. The Order provided, *inter alia*, that (1) Thomas's request to compel production of a video recording of Richard Bizousky was denied as irrelevant under Federal Rule of Evidence 401, (2) counsel for Happel was ordered to produce to plaintiff a letter verifying that all noise ordinance warning notices served on plaintiff were produced, and (3) plaintiff's request for an order directing Northampton County Communication Center to produce certain 911 recordings was denied without prejudice to Thomas's right to present the issue to the Court again after depositions of the defendants.

On June 2, 2015, the Court conducted a telephone conference for the purpose of resolving discovery and scheduling issues, in which Thomas and counsel for defendants participated. Thomas again raised his request for "the noise warning Officer Happel entered into evidence at the hearing before [Pennsylvania] Magistrate Schlegel on March 2nd of 2012." Counsel for Happel responded that Happel "physically went to the magistrate—the local District Justice Office where the file exists . . . [and] took a picture of the exhibit that she produced during the

17

hearing on her cell phone and she produced that picture to Mr. Thomas so he's now in possession of that." At that time, the Court concluded that there had been "complete compliance with Judge Rueter's Orders and with discovery rules, so that issue is not going to be re-litigated."

### 2.   Second Noise Warning

Thomas once again seeks a supposed "second noise warning" produced at the hearing before Pennsylvania Magistrate District Judge Schlegel. While Thomas avers that this notice exists, he has no evidence that there ever was such a second warning notice and therefore the Court denies the request.

The gist of Thomas's claim is that the warning notice he received from BTPD and defendant Pysher dated October 15, 2011, referred to two prior incidents where he was warned regarding loud music. However, the citations that Thomas received later in 2011, that ultimately led to the $4000 fine, were for noise violations caused by the barking of his dogs. Thomas asserts that this inconsistency renders the ultimate state conviction "illegal" unless there was in fact a second warning notice regarding prior incidents of barking dogs.

At her deposition, Happel was asked "so there obviously was two warning notices that day, weren't there?" and Happel responded "no." Deposition of Crystal Happel, at 20-21, Thomas Letter Request, Ex. 1. In addition, Happel produced to Thomas a photograph of the notice that she produced at the hearing before Magistrate Schlegel. The Court is satisfied that there is no second warning notice to be produced and thus Thomas's request to compel its production is denied.

### 3.   Evidence Relating to the Arrest of Richard Bizousky

Thomas requests an order from the Court compelling Happel to answer questions regarding "the Richard Bizousky arrest." The Court denies the request for the reasons stated in

Judge Rueter's rulings at the October 23, 2014, conference and in the October 24, 2014, Order, with which the Court agrees.

Thomas states in his letter that "Mr. Bizousky is going to testify at trial as to the fact that Officer Happel falsely arrested him, and then lied to the courts to try and procure an unjust conviction. This officer is a 'train wreck' of a police officer who exhibits a pattern of making false arrests. . . ." Judge Rueter concluded that production of a video of Richard Bizousky's arrest would not lead to the discovery of admissible evidence, and would confuse the issues, mislead the jury, and waste time. The same reasoning applies to compelling Happel to answer questions regarding Bizousky's arrest.

Federal Rule of Civil Procedure 26(b)(1) provides, "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relevant access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

Thomas has not articulated a reason why Happel's arrest of Bizousky is within the proper scope of discovery pursuant to Federal Rule of Civil Procedure 26(b)(1). The only apparent relevance of Bizousky's arrest is as evidence to show Happel's character, and such use would be barred by Federal Rule of Evidence 404. After consideration of the Rule 26(b)(1) factors, the Court concludes this issue is of, at most, minimal importance to the claims in this action and would impose a significant burden on defendants by re-opening discovery on a collateral issue. Accordingly, the Court denies Thomas's request to compel Happel's testimony on this issue.

#### 4. Return of Surveillance Tape

Thomas requests the return of a video tape he provided to defendants' counsel. Specifically, "prior to the deposition [of Happel], plaintiff asked [defendant's counsel] to return a surveillance tape [plaintiff] produced through discovery . . . and [counsel] refused." That is a proper request. Counsel for defendants shall return the surveillance tape produced by Thomas prior to Happel's deposition.

#### 5. Northampton County Communications Center 911 Tapes

Thomas requests a "court order upon the Northampton County Communications Center to produce tapes of Alvera Flyte's calls allegedly made on September 11th of 2011 at 12:03 am, instead of September 21st of 2011 between 10:30 and 11:30 at night." The Court concludes that plaintiff has not demonstrated that this request is within the scope of discovery under Rule 26(b)(1) and thus the Court denies the request.

Thomas initially made this request during the October 23, 2014, discovery hearing before Judge Rueter. At the hearing, Thomas stated, "they have the date listed here [on Noise Violation Warning Notice dated October 15, 2011] on September 21st, but they denied me the police report. What they actually did is [BTPD IIR] 11-2130 . . . is the actual incident report of September 21st, but the date and the time has been altered. . . ." Because of the incongruity between the date for the citation listed in the Noise Violation Warning Notice and BTPD IIR 11-2130, Thomas therefore requested the 911 call tapes, or other call tapes, from Northampton County Communications Center to confirm the date on which Flyte made the call in question which led to BTPD IIR 11-2130. At that time, Judge Rueter deferred ruling on the issue until after Thomas had the opportunity to depose Steigerwalt, the officer who made the report in

BTPD IIR 11-2130. Judge Rueter's October 24, 2014, Order provided that "plaintiff may present this issue to the court after plaintiff has taken the depositions of the individual defendants."

Thomas asked Steigerwalt about the events leading to BTPD IIR 11-2130 at Steigerwalt's deposition on August 28, 2015. Steigerwalt was asked to review IIR 11-2130 and this led to the following line of questioning:

> THOMAS: Now I need you to verify that the complaint was, in fact, made on September 11, of 2011.
> STEIGERWALT: That's what the report says on the top.
> Q: That was at 12:03 a.m., correct?
> A: It appears to be yes.
> . . .
> Q: Do you remember responding to a noise complaint on September 21 of 2011 at 10:20 p.m.?
> A: No, not without seeing it in front of me.
> Q: But you know that that incident did not occur on September 21 of 2011?
> A: I don't recall that incident. You'd have to show it to me, and then I could recall it.

Thomas avers that this discussion proves that Steigerwalt altered the police report.

The Court first notes that Thomas has not established that either the Noise Violation Warning Notice or IIR 11-2130 were deliberately altered. Neither Thomas nor Steigerwalt are able to recall the incident or when it occurred with specificity. It is entirely possible that the Noise Violation Warning Notice or IIR 11-2130 contain an accidental typographical error, recording an incident that occurred on September 11th as one that occurred on September 21st or vice versa. At the hearing before Judge Rueter, counsel for defendants confirmed that they produced every BTPD IIR involving Thomas or Flyte and there is no evidence that defendants have withheld any police reports relating to this litigation.

Further, the Court concludes that whether or not the alleged incident occurred on September 11th or September 21st, and even whether or not the police report was deliberately altered, is irrelevant to Thomas's claims in this case. The events of the incident did not lead to a

citation of Thomas. Thomas avers that "this goes to Officer Steigerwalt's credibility . . . and will also help to portray the [BTPD] as it truly is, 'organized crime.'" However, Thomas provides no support for the assertion that Steigerwalt deliberately changed the date and there is no evidence whatsoever from which a jury could infer that BTPD is engaged in "organized crime." The exact date of one incident out of dozens presented to the Court is a collateral issue not directly relevant to any of Thomas's claims and will not aid the trier of fact in determining the merits of Thomas's claims.

In light of the limited relevance of this issue to Thomas's claims, the limited probative value of what appears to have been an inadvertent typographical error, the extensive discovery already conducted in this case, and the burden and expense involved in producing the evidence sought, the Court denies Thomas's request to compel production of the Northampton County Communications Center call records.

### 6. Sanctions

Because the Court denies Thomas's requests to compel discovery for the above reasons, with the exception of the return of the surveillance tape, the Court also denies Thomas's request for sanctions "against defendants to bring them into compliance with the rules of discovery."

### B. Defendants' Motions for Summary Judgment

The arguments in both sets of defendants' Motions to for Summary Judgment overlap substantially and the Court will address the arguments in the Motions together. First, all defendants argue that their Motions for Summary Judgment on the class-of-one claim should be granted because there is no dispute of material fact and they are entitled to judgment as a matter of law. Second, all defendants argue that their Motions for Summary Judgment on the selective-enforcement claim should be granted because there is no dispute of material fact and they are

entitled to judgment as a matter of law. Third, all defendants argue that they are entitled to qualified immunity.[7] For the reasons that follow, the Court grants the Motions for Summary Judgment.

### 1. Legal Standard

The Court will grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is material when it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether . . . there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249. In considering a motion for summary judgment, "the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007).

The Court must be "flexible when applying procedural rules to pro se litigants, especially when interpreting their pleadings." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013) (citing *Haines v. Kerner*, 404 U.S. 519 (1972)). The Court "will apply the applicable law, regardless of whether the *pro se* litigant has mentioned it by name." *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003). However, this rule of leniency does not apply to "evidentiary

---

[7] In addition, defendants Marino, Lohman, Vresics, Steigerwalt, and Pysher argue that some or all of Thomas's claims are barred by the statute of limitations. Because the Court grants defendants' Motions for Summary Judgment in their entirety on other grounds, the Court need not address the statute of limitations issue.

deficiencies." *Mala*, 704 F.3d at 249. To defeat a motion for summary judgment, a *pro se* plaintiff still has the burden of "producing evidence 'such that a reasonable jury could return a verdict for him.'" *Zilich v. Lucht*, 981 F.2d 694, 696 (3d Cir. 1992) (quoting *Anderson*, 477 U.S. at 242).

### 2.   Class-of-One Claims

Defendants argue that their Motions for Summary Judgment should be granted as to Thomas's class-of-one claims because Thomas has failed to produce evidence sufficient for a reasonable jury to return a verdict in his favor on these claims. The Court concludes that Thomas has failed to produce such evidence and grants defendants' Motions for Summary Judgment as to the class-of-one claims.

A plaintiff may bring an equal protection claim for violation of the Fourteenth Amendment "where the plaintiff alleges that [he] has been treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam). Where state action "involve[s] discretionary decisionmaking based on a vast array of subjective individualized assessments[,] . . . the rule that people should be 'treated alike, under like circumstances and conditions' is not violated when one person is treated differently from others. . . ." *Engquist v.Oregon Dep't of Agric.*, 553 U.S. 591, 603 (2008). However, a plaintiff may bring class-of-one claim against a police officer for abuse of their discretion if "the officer . . . repeatedly arrests someone solely [out] of malice [because] [t]he officer motivated by malice alone is not exercising discretion and is not weighing the factors relevant to the officer's duties to the public." *Hanes v. Zurick*, 578 F.3d 491, 496 (7th Cir. 2009). Plaintiff must show that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) that there was no

rational basis for the difference in treatment. *Greco v. Senchak*, Civil Action No. 14-3212, 2015 WL 5601307, at *2 (3d Cir. Sept. 23, 2015) (citing *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006)).

Thomas has failed to identify any evidence of record that supports his allegation that defendants intentionally treated him differently, let alone that he was treated differently out of malice or personal animus. The record demonstrates that the BTPD officer defendants, and the BTPD officers not involved in this case, made reasonable efforts to de-escalate the dispute between Thomas and Flyte. After each call from Flyte, the BTPD officer defendants responded and conducted an investigation into Flyte's complaints. On multiple occasions, the BTPD officers departed without even speaking with Thomas. In some instances, the BTPD officers interviewed Thomas and/or Flyte prior to departing the scene. The IIR reports and Thomas's own testimony demonstrate that Thomas regularly spoke with the BTPD officer defendants regarding Flyte's complaints and that the BTPD officer defendants took Thomas's version of events into account in deciding how to proceed. Thomas disputes the descriptions in the IIRs of events when the BTPD officer defendants responded to calls from Flyte or the dates on which certain incidents took place, but he does not dispute that the underlying events occurred or that the officers conducted the investigations related in the reports.

Furthermore, the vast majority of calls did not end in a citation of Thomas. All of the calls made by Flyte against Thomas over an almost twelve-year period resulted in just five

citations.[8] The record shows that each citation was issued only after Thomas had been warned by BTPD on prior occasions, both verbally and in writing. Moreover, four of the five citations of Thomas were affirmed by state courts on appeal. This is compelling evidence that there was an individualized rational basis for each of the citations of Thomas. To the extent that Thomas is now disputing the facts underlying the state court judgments, the Court rejects Thomas's attempt to re-litigate the state judgments via this § 1983 action.

Flyte is ill-suited as a comparator because she and Thomas are not similarly situated. [9] Thomas was cited several times for violations of the noise ordinance. But there is no evidence of record that any noise ordinance-related complaint was made by Thomas, or anyone else, regarding Flyte. The only citation Flyte and Thomas have in common is for harassment, and there is no evidence to support a genuine dispute of material fact as to the bases of these citations. Thus, with regard to the ordinances Thomas was cited for violating, there is no evidence that Flyte was treated differently. *See Sheddy Family Trust v. Piatt Township*, 404 F. App'x 629, 632 (3d Cir. 2010) ("The Sheddy's fail to provide any evidence explaining how these distinctions do not amount to a 'rational basis for the difference in treatment' with their purported comparators.").

---

[8] The Court notes that just two of these citations, the citations for violation of the noise ordinance issued in the fall of 2011, are within the applicable statute of limitations and thus only these citations could be the bases for the claims in this case. *See Garvin v. City of Philadelphia*, 354 F.3d 215, 2202 (3d Cir. 2003) (explaining that § 1983 imports state statutes of limitations and the applicable Pennsylvania statute of limitations is two years). However, the Court considers the entire course of conduct presented in the record to determine if there is any evidence of animus, even evidence of events occurring outside of the limitations period.

[9] Thomas also makes passing reference to two other alleged comparators, Steven Koch (or Kock) and Russell Costenbader, in one of his Responses. Memorandum in Opposition to Defendants Chief of Police Stanley J. Coopersmith, & Officers David Marino, Mandy Lohman, & Crystal Happel Motion for Summary Judgment, at 13-14. These individuals are also mentioned in the Amended Complaint. Am. Compl. ¶¶ 17, 19. However, there is no evidence regarding these comparators in the record and the IIR referred to in the Amended Complaint is not included in Thomas's Exhibits.

Thomas makes the argument that, because most of Flyte's complaints did not result in citations, the failure of the BTPD officer defendants to arrest her for filing a false complaint demonstrates disparate treatment. Thomas fails to explain why defendants' failure to cite Flyte for filing a false report, a crime for which he was also not cited, is evidence of disparate treatment. Both Thomas and Flyte made complaints about each other to BTPD that ultimately did not lead to citations being issued by the investigating officers. Neither Thomas nor Flyte were cited for filing a false police report following these complaints.

Examining the record as a whole, the Court concludes that there is no evidence that would allow the factfinder to infer that any of the defendants behaved arbitrarily or discriminatorily. Contrary to Thomas's assertions, the facts of this case are not comparable to *Hanes*, where officers arrested plaintiff repeatedly, "out of sheer malice," and all of the charges were later dropped. 578 F.3d at 492. Instead, the record demonstrates that the BTPD and the defendants attempted to mediate, not aggravate, the dispute between Thomas and Flyte by issuing informal warnings, at most, in response to most of Flyte's complaints. The defendants cited Thomas only after an independent investigation of each incident and state courts affirmed these citations in four out of five cases. Thus, the Court grants defendants' Motions for Summary Judgment as to Thomas's class-of-one claims.

### 3.   Selective-Enforcement Claims

Defendants argue that their Motions for Summary Judgment should be granted as to Thomas's selective-enforcement claim because he has failed to produce evidence sufficient for a reasonable jury to return a verdict on those claims. The Court concludes that Thomas has failed to present sufficient evidence and grants defendants' Motions for Summary Judgment as to the selective-enforcement claims.

"Selective discriminatory enforcement of a facially valid law is unconstitutional under the Equal Protection Clause of the Fourteenth Amendment." *Jewish Home of Eastern Pa. v. Ctrs. for Medicare and Medicaid Servs.*, 693 F.3d 359, 363 (3d Cir. 2012). To succeed on a selective-enforcement claim, plaintiff must show (1) that he was treated differently from another similarly situated individual and (2) that this selective treatment was "based on an unjustifiable standard, such as race, or religion, or some other arbitrary factor, or to prevent the exercise of a fundamental right." *Id.* Plaintiff must show discriminatory purpose, "not mere unequal treatment or adverse effect." *Id.*

Thomas's claim fails because he has not identified any similarly situated individual who was treated differently. As discussed above in the context of Thomas's class-of-one claims, Flyte is not similarly situated to Thomas for purposes of this analysis. Both Thomas and Flyte were cited for harassment. There is no evidence that any complaints were made that Flyte violated the noise ordinance. Neither Thomas nor Flyte were ever cited for filing a false police report or making a false complaint. Furthermore, Thomas has not identified any evidence to support an inference that Thomas was treated differently from Flyte for a discriminatory purpose.

To the extent that Thomas seeks to rely on the alleged comparators in his Amended Complaint, ¶¶ 17, 19, 36, this is insufficient to defeat a motion for summary judgment when there is no evidence of record supporting the allegations in the Amended Complaint. *See Mala*, 704 F.3d at 705 ("Our traditional flexibility toward *pro se* pleadings does not require us to indulge evidentiary deficiencies."). Thomas has failed to produce evidence that these incidents occurred and the IIRs are not included in the exhibits he presented. Furthermore, Thomas has failed to produce evidence that these individuals were similarly situated to him. Accordingly, the Court grants defendants' Motions for Summary Judgment as to Thomas's claims for selective

enforcement because Thomas has failed to establish that he was treated differently from any similarly situated individual.

### 4. Qualified Immunity

Defendants also assert a defense of qualified immunity. To overcome a defense of qualified immunity, Thomas must first "show the violation of a constitutional right." *Kelly v. Borough of Carlisle*, 622 F.3d 248, 253 (3d Cir. 2010) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)) Having determined that Thomas has failed to produce evidence sufficient to allow a reasonable jury to conclude that there has been a violation of Thomas's constitutional rights, the Court concludes that the defendants are also entitled to qualified immunity from all of Thomas's claims.

## IV.   CONCLUSION

For the foregoing reasons, the Court denies Thomas's letter request dated October 3, 2015, to compel discovery and for sanctions, except that counsel for defendants shall return the surveillance video provided by Thomas prior to defendant Happel's deposition. The Court grants defendants' Chief of Police Coopersmith and Police Officers David Marino, Mandy Lohman, and Crystal Happel's Motion for Summary Judgment and defendants' Police Officers Dale Steigerwalt, Ellis Pysher, and Ryan Vresics's Motion for Summary Judgment, and enters judgment in favor of all defendants and against Thomas. An appropriate order follows.